# CHATEAUGAY ORE AND IRON COMPANY *v.* BLAKE.

## ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 189. Argued March 4, 7, 1892. — Decided April 11, 1892.

B. contracted with C. to construct and put up for him a crushing plant, with a guaranteed capacity of 600 tons daily,.and C. agreed to pay therefor $25,000, one-half on presentation of the bills of lading and the remainder when the machinery should be successfully running. The machine was completed and put in operation October 1. The agreed payment of $12,500 was made on delivery, and $7500 in three payments in the course of a month. B. sent a man to superintend the putting up of the machine and to watch its working. Under his directions a book was kept in which were recorded either by himself or under his directions by C.'s foreman, the daily workings of the machine between October 18 and November 7, which account was copied by B.'s man and sent to B. The working from November 7 to the following March was also kept in the same way. In an action by B. against C. to recover the remainder of·the contract price; *Held,*

(1) That B.'s man could use these books in his examination in chief to assist him in testifying as to the actual working of the machines from October 18 to November 7;

(2) That the defendant not having introduced the books, (which were in his possession,) in his evidence in reply to the plaintiff's evidence in chief, could not, in rebuttal, ask a witness to examine them and state the results as to the working of the machine in the months of November, December and January, which subjects had not been inquired about by the plaintiff.

Evidence of a local custom is not admissible unless it is shown to be known to both parties; and this court may infer, from the general course of the inquiries and proceedings at the trial, that a custom inquired of at the trial and so excluded, was regarded by the court and by both parties as a local custom, and not as a general custom, although the record may contain nothing positive on that point.

An exception that the court did not charge either of eighteen enumerated requests for special instructions except as it had charged is an insufficient exception.

THE court stated the case as follows:

The defendant in error, plaintiff below, is a manufacturer, engaged in the manufacture and sale of a crushing machine known as the "Blake" crusher. Plaintiff in error, defendant below, owns and operates a large mine of iron ore in Clinton County, New York. In 1881 and 1882 plaintiff built for defendant a crushing mill of 200 tons capacity per day, which was accepted by the defendant and satisfactorily used for years. The operation of this crusher and its adaptability to the business necessities of the defendant were thus fully disclosed to the latter by its experience of these years. With this experience and knowledge, the following contract was entered into between the parties:

" Memorandum of agreement made and entered into this 26th day of March, 1886, between Theodore A. Blake, of New Haven, Conn., and the Chateaugay Ore & Iron Co., of Plattsburg, New York.

" Theodore A. Blake, party of the first part, in consideration of one dollar to him in hand paid and of other considerations, covenants and agrees to furnish the Chateaugay Ore & Iron Co. with a crushing plant, guaranteeing capacity of six hundred tons daily, crushed — to pass through a round hole $\frac{4}{16}$ths of an inch in diameter, consisting of the necessary crushers, screens, elevators, shafting, hangers, pulleys, couplings, collars and belts, in accordance with the specifications hereunto annexed and drawings already submitted, delivered free on board cars at places of manufacture, together with full detailed plans of building for said crushing plant and arrangement of crushing machinery therein, and that he will send a competent man to superintend the placing and erection of the machinery without extra charge, except for board and travelling expenses, and an experienced man to put on all belts, on same terms, for the sum of twenty-five thousand five hundred dollars.

" And the said Chateaugay Ore & Iron Co., party of the second part, in consideration of the premises and other considerations, agrees to pay the said Theodore A. Blake or his order one-half the amount, viz., twelve thousand seven hun-

dred and fifty dollars, on presentation of the bills of lading for the sixteen crushers at the said company's office and the remainder when the machinery is successfully running.

"THEODORE A. BLAKE,

"CHATEAUGAY ORE & IRON CO.,

"By A. L. INMAN, *Gen'l M'g'r.*"

The first half of the purchase price was paid at the stipulated time. The crushing plant was completed and put in operation about the first of October, 1886. On October 7, defendant paid plaintiff $2500; on October 27, $2500; and about the 9th of November, $2500 in addition; making $7500 paid after the completion of the plant and the commencement of its operation, and leaving a balance under the contract of $5250, for which, suit was brought. Another suit was also commenced for extras and the expenses of the superintendent. The two were consolidated by order of the court and proceeded to trial as one. Verdict and judgment were in favor of the plaintiff for $9574.53; to reverse which judgment the defendant, plaintiff in error, sued out this writ of error.

The assignments of error, so far as noticed by the court in its opinion, were:

*First.* In allowing the witness, Charles S. Brown, (the agent of Blake,) to testify on behalf of the plaintiff from certain memorandum books produced by the said plaintiff;

*Second.* In refusing to permit defendant to offer testimony in rebuttal based upon the same books which it had ruled were admissible against it as set forth in the preceding assignment of error;

*Third.* In refusing to allow the witness Inman, the general manager of defendant and sworn on its behalf, to answer the question, " What in your judgment is the daily capacity of that mill ?" the only objection being that the witness had not been shown competent to answer;

*Fourth.* In refusing to allow defendant to prove a general usage or custom in the business of mining iron ore whereby a day's work consists of two shifts of ten hours each;

*Fifth, etc.* In refusing requests for charges.

*Mr. Edmund Wetmore* and *Mr. Frank E. Smith* for plaintiff in error.

I. The memorandum books from which Brown was allowed to testify were not competent evidence against the company. They were not books or records of the company, and Brown was Blake's representative at the mine. He caused these books to be kept, and the greater part of the entries are in his handwriting.

In February, 1887, after the keeping of the books was ended, a copy was sent by Brown to Mr. Inman, the general manager of the Iron Company. These circumstances plainly characterize the books as those of Mr. Blake and not of the defendant. As such they could only be used in his favor after the correctness of the entries had been established by some witness having knowledge of the facts recorded. *The Mayor v. Second Avenue Railroad*, 102 N. Y. 572, 579; *Chaffee v. United States*, 18 Wall. 516.

The books were not competent as admissions or declarations made by agents of the Iron Company. Admissions or declarations made by an agent as evidence against the principal stand upon an entirely different foundation from the admissions of the party himself. The unsworn statement of the agent to be received against the principal must not only relate to an act which the agent is authorized to do, but must also be made while the act itself is still pending. In other words, the statement of the agent is received only when it constitutes a part of the *res gestæ.* Greenl. Ev., sec. 113. This rule is strictly adhered to by this court. *Packet Co. v. Clough*, 20 Wall. 528; *Vicksburg & Meridian Railroad Co. v. O'Brien*, 119 U. S. 99.

The foremen of the mill were not the agents or servants of the Iron Company, but of Blake as regards the books in question. The books were kept in the interest of Blake. The object of keeping them was to enable him to have a record of the work done by the mill. Whatever was done by any agent or servant of the defendant with reference to them was done at the request of Blake's agent and for his convenience. Manifestly it was impossible for Brown to be at the mill con-

stantly day and night. It was necessary that some one should assist him if he was to obtain a record which should cover the entire time. He selects for that purpose the men at work in the mill. These men could do his work only with the consent of their employer, the Iron Company, which consent was given and the men instructed to do what Brown desired done in this behalf. The men therefore in preserving the data on which the books were made were doing his work, and not the work of the defendant, which had, in the reports of its weigh-master an independent record of the ore crushed at the mill.

Even assuming that the foremen of the mill were in all respects the servants of the Iron Company, it was not within the scope of their authority to make admissions which should be evidence against their employer. *First Unitarian Society* v. *Faulkner*, 91 U. S. 415.

II. The refusal of the court to allow defendant to avail itself of the memorandum books, after plaintiff had used them against it was error. The testimony offered was strictly in rebuttal. We of course concede the rule that a party must exhaust his case in chief before he rests, and that testimony in rebuttal, as matter of strict right, must be confined to matter which denies or qualifies facts first proved by the other side. *Marshall* v. *Davies*, 78 N. Y. 414.

The actual working of the mill upon isolated days, or during particular parts of October or November, being facts first brought out by the plaintiff, after defendant's case was closed, it was strictly in rebuttal to show that the actual working upon other days at substantially the same time, was very different, and so qualify or limit the effect of the fact first proved by plaintiff. The right of a party after he has closed his case in chief, to offer evidence tending to deny, limit or qualify a fact first brought into the case by his adversary, or to contradict a statement made by one of his witnesses, is a strict legal right, and one which it is error to deny. *French* v. *Hall*, 119 U. S. 152; *Winchell* v. *Winchell*, 100 N. Y. 159; *Ankersmit* v. *Tuch*, 114 N. Y. 51; *Asay* v. *Hay*, 89 Penn. St. 77; *Hayward* v. *Draper*, 3 Allen, 551; *Kent* v. *Town of Lincoln*, 32 Vermont, 591.

The testimony should have been received on the ground that it was an omitted part of an admission made by defendant, the other part of which had been used against it. The books themselves cannot be made competent evidence against defendant except on the theory that they were admissions made by an agent.

The party seeking to use an admission made by his adversary cannot pick out that part which is in his favor and omit what qualifies or limits it. He must take the whole or none. *Insurance Co.* v. *Newton*, 22 Wall. 32. *Grattan* v. *Metropolitan Life Ins. Co.*, 92 N. Y. 274, 284.

III. It was error to reject the testimony of Mr. Inman, defendant's general manager, as to the daily capacity of the mill.

The general manager of defendant was asked what, in his judgment, was the daily capacity of the mill? No objection was made that the capacity of the mill was not a proper subject for expert evidence, and indeed the plaintiff had made out his *prima facie* case in that way. The only objection was that the witness had not been shown competent to answer. It had been made to appear that he was familiar with the business and knew what the mill had done, as well as what a similar mill, built by plaintiff for defendant, some years previous, had done. It is submitted that the testimony showed the witness to possess such qualifications and knowledge as to make his testimony admissible, and that it was error to exclude it. *Stillwell & Bierce M'f'g Co.* v. *Phelps*, 130 U. S. 520.

IV. The court erred in refusing to permit defendant to show that the words "daily capacity" in the contract meant a day of twenty working hours.

The customs and usages of the business to which a written contract relates may be proved in aid of its interpretation, and the general usages of such a business are presumptively known to persons making contracts with reference to it. *Hostetter* v. *Park*, 137 U. S. 30, 40; *McMasters* v. *Pennsylvania Railroad*, 69 Penn. St. 374; *Walls* v. *Bailey*, 49 N. Y. 464.

It was competent to prove by parol evidence that the word "day" or "daily" used in the written contract had a peculiar

or technical meaning in the business to which the contract related.

The use of parol evidence to attach a special meaning to common words when used with reference to a particular trade or business is one of the settled exceptions to the rule excluding parol evidence as to a contract reduced to writing. And for the purpose of showing the peculiar meaning of an everyday word, and thereby converting it into a word of art, it is common and established practice to receive proof of the usage of the trade with reference to it. *Hinton* v. *Locke*, 5 Hill, 437; *Newhall* v. *Appleton*, 114 N. Y. 140; *Smith* v. *Clews*, 114 N. Y. 190; *Grant* v. *Maddox*, 15 M. & W. 737; *Robinson* v. *United States*, 13 Wall. 363; *Bradley* v. *Steam Packet Co.*, 13 Pet. 89; *Myers* v. *Sarl*, 3 El. & El. 306; *Lowe* v. *Lehman*, 15 Ohio St. 179; *Cochran* v. *Retberg*, 3 Esp. 121.

V. The court erred in refusing certain requests to charge, duly submitted.

*Mr. R. D. Mussey* and *Mr. L. E. Chittenden* for defendant in error.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

The question in this case is whether or not the plaintiff fully performed his contract of March 26, 1886. The contract stipulated for payment of one-half of the price before, and of the other half when the machinery was completed and successfully running. Now, in addition to the full payment of the one-half, substantially three-fifths of the other was paid in three successive payments; the first within one and the last not until six weeks after the commencement of actual operations. There is significance in these latter payments. While not conclusive on the company, they indicate that in its judgment, for a while at least, the plant fully satisfied all the conditions of the contract, and are properly to be considered in determining the merits of the defence made to this action.

That defence is, that the plant was improperly and unskilfully constructed, of weak and defective parts, of material not adapted to the work which it was designed to perform, and that its actual working capacity did not exceed 350 tons a day. The answer, besides its defensive allegations, contained a counter-claim.

The first matter we notice is the alleged error in the testimony of Charles S. Brown, who, from certain account books which he presented, was permitted to testify as to the actual working of the plant between October 18 and November 7, giving in that testimony the actual hours the plant was working, the number of tons crushed, the hours of delay, and the causes therefor. This witness was sent by Mr. Blake to superintend the erection of the plant, to watch its workings when completed, and to make any needed repairs, improvements or changes. At his suggestion, after the plant commenced work, the defendant's superintendent directed the foremen of the mill to keep these books. The foremen, of whom there were four, generally made the entries on the books, though sometimes Brown did the writing at their dictation. The entries were made daily; at least, that was the intention and the general practice. The amount of ore crushed, as disclosed by these books, corresponded within a few tons with the amount testified to by the officers of the defendant company. Brown, himself, was present at the mill most of the time during the day, and had a general knowledge of the accuracy of these entries, so far as respects the work during that time. We think the testimony was competent. The books were kept by the direction of the defendant's superintendent, and the entries made by its foremen. They were intended to be, and in fact generally were, contemporaneous with the matters stated; and their substantial accuracy is corroborated by the personal knowledge of the witness, and the near coincidence of the general result with that vouched for by the defendant. They may not have been account books of the defendant, in the technical sense of the term, such as are generally admissible against a party, but they were memoranda made under the direction of the defendant for the purpose of preserving a

record of certain facts, and made under such circumstances as
to be worthy of a measure of credence as against it.

A second matter is this: The general manager of the de-
fendant was asked what, in his judgment, was the daily capac-
ity of the mill. This question was objected to on the ground
that the witness was not shown to be competent to testify as
an expert, which objection was sustained. How much knowl-
edge a witness must possess before a party is entitled to his
opinion as an expert is a matter which, in the nature of
things, must be left largely to the discretion of the trial court,
and its ruling thereon will not be disturbed unless clearly
erroneous. *Stillwell & Bierce Mfg. Co.* v. *Phelps*, 130 U. S.
520; *Montana Railway Company* v. *Warren*, 137 U. S. 348;
*Inland & Seaboard Coasting Co.* v. *Tolson*, 139 U. S. 551.
This witness testified that he had been general manager of the
defendant company for six years; and that he was at the mill
as often as twice a month, and usually went there once a
week. He does not appear to have been a practical machin-
ist, or to have had any special knowledge of mining or crush-
ing machinery. He was not superintendent of the workings
of the mine or of the machinery, and does not claim to have
been there regularly, or, indeed, oftener than once a week,
and, as general manager, was apparently more employed in
the financial and outside business affairs of the company than
in the details of the mining or the practical workings of the
machinery. We think the ruling of the trial court in exclud-
ing his opinion was right; at any rate, it cannot be adjudged
clearly erroneous.

Another matter is also complained of, and to a clear under-
standing of this question the course of the trial must be
stated. The plaintiff opened by proving the construction of
the mill, and, in a general way, that it had the capacity of 600
tons daily, and also the payments by the defendant. He then
rested, and the defendant introduced testimony to show that
the mill was not of the stipulated capacity, and explaining the
circumstances of the subsequent payments. This included
evidence of the actual workings of the mill from the 1st of
October, 1886, to the 1st of January, 1888, the difficulties

that were encountered in its workings, the stoppages, what was done on such occasions, and the efforts to remedy supposed defects, as also the opinions of competent witnesses as to its capacity.. In other words, it went fully into the matter of the actual workings of the mill, and its alleged incapacity to do the stipulated amount of crushing. In rebuttal, plaintiff called the witness Brown, who gave the testimony heretofore referred to from the memorandum books. It appeared from his testimony that the books had been kept from October 18 till he left, in March following. He had made out from them a statement of the facts respecting the workings of the mill from October 18 to the 7th of November, which he had forwarded to the plaintiff, and the details of that statement, as verified by the books, was the sum and substance of his testimony. After he had finished, and the plaintiff had rested in his rebuttal, the defendant called a witness named Hall, who testified that he had examined the books, and he was then asked what the average run per hour was for the months of November, December and January, separately, as shown by those books. This testimony was objected to and ruled out, and of this defendant now complains. We think the ruling of the court was right. If the defendant had a right after the plaintiff had closed his case in rebuttal to introduce any testimony at all, such right was limited to the new matters brought out in the rebuttal; and while the fact of the existence of these books, and that they were kept for several months was then disclosed for the first time, the only matters therefrom presented to the consideration of the jury were those transpiring between October 18 and November 7. As to those matters, the witness Hall was given full liberty of testifying, and that certainly was as far as the defendant's rights extended. These books were its own books; at least, made by its own employés under the direction of its superintendent. It did not offer them when it was making its defence, and the fact that certain portions of them are brought to the attention of the jury on plaintiff's rebuttal did not entitle it thereafter, and after the plaintiff had finally closed his testimony, to present the whole matter of these books in evidence.

Still another matter is this : Defendant called as a witness Smith M. Weed, who testified that he was a lawyer, but not in actual practice, and had not been for eight or ten years; that he was one of the defendant's directors; that he was interested in mining iron ore; and that that had been his principal business and taken most of his time for the past twenty years. He was then asked this question : "What is understood by a day in the iron mining business?" the defendant's counsel saying that he offered to prove the independent fact that a day means two shifts of ten hours each in iron mining. This testimony was offered for the purpose of interpreting the stipulation in the contract guaranteeing a capacity of 600 tons daily. In other words, the defendant sought to prove by this that the contract was for a mill capable of crushing 600 tons in twenty hours, instead of twenty-four hours. This testimony was objected to, and the ruling of the court was stated in these words : "I do not think that it is admissible unless you propose to show that that local custom was known to both contracting parties." Evidently the court understood that a local and not a general custom was sought to be proved. It is true the question is general in its terms; but for some reason, not altogether apparent — perhaps from the course of the testimony of this witness — the court understood the question to be directed to a merely local usage, to wit, that obtaining in the mine of which the witness had been speaking. If it was such local usage, the court was right in holding that it could not affect the meaning of the terms used in the contract unless known to both parties. Of a custom prevailing generally there may be a presumption of knowledge; and the testimony might have been competent without anything directly bringing home knowledge of it to the plaintiff. If the court misunderstood the scope of the question, counsel should have corrected the misunderstanding at the time; but, simply noting an exception, they passed on to a further and different examination. They were notified that the court was ruling on an offer to prove a local custom. If that was not what they sought to prove, they should then have stated the fact. Saying nothing, it must be held that

the court properly interpreted the scope of the offer, and it will not do now to say that the language of the question is broad, and comprehensive, and that the court ruled out evidence of a general custom and understanding in the mining business as to the meaning of a common word. When the general manager of the company was thereafter on the stand a substantially similar question was put to him by counsel, and an objection was sustained without any comments by the court. Of course, if that ruling stood by itself its correctness might have to be determined by all implied in the question; but in view of that which had previously passed we think it fair to hold that the court was simply continuing the ruling which it previously made, and not that it was passing upon a new and independent question.

We have been not a little embarrassed by this matter, and the question is not free from difficulty; but we think the interpretation we have given is the correct one; at all events, if not the only, it is a fair interpretation of the proceedings, and error is not to be presumed. The rulings of the trial judge are to be taken as stated by him, and not to be carried beyond his own statement unless clearly demanded by the circumstances of the case. It is worthy of note in this connection that, according to the testimony, defendant's mill during certain months worked twenty-two hours a day. And, further, that in a letter written by the general manager of the company to plaintiff, in 1881, preliminary to the contract under which the first crusher was furnished by plaintiff, the writer says: "What we want is appliances that will crush (without roasting) 200 tons of crude chunk ore in 24 hours, and stand the racket month in and month out without breakdowns and stoppages. . . . Now, if we can do the work we speak of (200 tons daily) and dispense with rolls it is a great desideratum." Evidently "daily" at that time was used in the ordinary significance of the term, and it would require very satisfactory testimony to show that in this later contract it was used in a different sense. We think it must be held that the court did not err in its rulings in this respect.

The final matter is concerning the instructions: To the

general charge no exceptions were taken. Eighteen special instructions were asked, and in respect to them the bill of exceptions states: "The court did not charge either of said requests except as he had charged. For the refusal of the court to charge in the specific language of said hereinbefore-recited requests, the defendant's counsel then and there duly excepted." In this way only is any exception taken to the matter of the instructions. But this wholesale exception is not sufficient. *Connecticut Mutual Life Ins. Co.* v. *Union Trust Co.*, 112 U. S. 250; *Burton* v. *West Jersey Ferry Co.*, 114 U. S. 474.

These are the only matters presented for our consideration. The judgment will be

*Affirmed.*