# BRADLEY *v.* DISTRICT OF COLUMBIA.

POLICE REGULATIONS; SMOKE LAW; EXPERT TESTIMONY.

1. The act of Congress of February 2, 1899, prohibiting the emission of dense or thick black or gray smoke from chimneys in this District is upon its face a valid exercise of the power of Congress to legislate for the District; *following* Moses v. United States, 16 App. D. C. 428.

2. The provision in the fifth section of that act " that no discrimination shall be made against any method or device which may be used for the prevention of smoke which accomplishes the purposes of this act " is only a recognition of the probability of the use of smoke-consuming devices, rather than a change to smokeless fuel, and seeks merely to provide against possible unjust discrimination between such devices, and does not imply that the act is designed to prevent the emission of smoke only so far as the adoption of such devices can secure such prevention.

3. How much knowledge a witness must possess of a certain science or art in order that his opinion shall be competent evidence, is a matter largely within the discretion of the trial court, and its ruling thereon will not be disturbed unless clearly erroneous.

4. The real estate officer of a trust company having general charge of its building, but not shown to be a mechanical engineer or to have charge of the actual operation of the furnace, or to be competent to operate it in person, is not qualified as an expert to testify that there is no known smoke-consuming device which will cause combustion without emitting any smoke whatever, and that it is physically impossible to comply with an act of Congress prohibiting the emission of dense or thick black or gray smoke from chimneys within the District of Columbia; nor will the statement of such witness that he has given the subject of abatement of smoke, examination and is qualified to speak from his experience in reference to the matter, render his testimony competent. To lay a proper foundation for the admission of his testimony he should state the facts and circumstances tending to show the nature and extent of his knowledge so that the court can determine his competency therefrom.

5. In a prosecution of a person charged with a violation of the act of Congress of February 2, 1899, prohibiting the emission of dense or thick black or gray smoke from chimneys in this District, an offer by the defendant to prove that there is no known device to be used with fuel that will cause combustion without the emission of any smoke whatever, is properly rejected as the statute does not prohibit the emission of all smoke but only the kind of smoke indicated.

6. And in such prosecution, an offer by the defendant to prove that it is physically impossible to comply with such act of Congress is also properly rejected, being a mere statement of a conclusion without giving or offering to give the facts upon which it is founded.

7. The character of evidence necessary to be offered by the defendant in such a prosecution to show that the act of Congress of February 2, 1899, prohibiting the emission of such smoke from chimneys is impossible of enforcement and void, *discussed* and *indicated*.

No. 1193.  Submitted May 8, 1902.  Decided May 20, 1902.

In ERROR to the police court of the District of Columbia. *Judgments affirmed.*

The COURT in the opinion stated the case as follows:

Two informations in the police court charged Thomas Bradley, as the occupant of a building, with two distinct violations of the act of Congress of February 2, 1899, prohibiting the emission of a certain character of smoke from the chimneys of such buildings.  The informations were tried together, and the defendant was convicted under both and sentenced to pay a fine of twenty dollars for each offense.

The bill of exceptions reserved on the trial and on which the writ of error was applied for and granted, recites the following offer of evidence on behalf of the defendant which was rejected:

Defendant proposed to testify that he was " the real estate officer of the Washington Loan and Trust Company, a ten-story office building requiring the use of boilers and furnaces and the building from which the said smoke was said to have been emitted, and had been such officer for a period of about

three years; that he had charge of the furnaces and operating of said building and was thoroughly acquainted therewith; that he had given the subject of the abatement of smoke examination and was qualified to speak from his experience in reference to said matter; and further the defendant offered to prove by this witness and other witnesses that there was no known device, machine, or method to be used either in connection with hard, soft, or mixed coals or other materials, which would cause combustion without emitting any smoke whatever, and that it is physically impossible to comply with the terms of the act of Congress which declares that the emission of dense or thick black or gray smoke or cinders from any smokestack or chimney used in connection with any stationary engine, steam boiler or furnace of any description within the District of Columbia is a public nuisance."

Mr. *John B. Larner* for the plaintiff in error.

Mr. *Andrew B. Duvall,* Corporation Counsel, and Mr. *E. H. Thomas,* assistant, for the defendant in error.

Mr. Justice SHEPARD delivered the opinion of the Court:

1-2. The first and second errors assigned on behalf of the plaintiff in error, attack the constitutionality of the act of Congress declaring the emission of dense, or thick black or gray smoke to be a nuisance.

This question was argued before us in a former case arising under this act, and upon full consideration we then decided, that for all that appeared on the face of the act or in the evidence submitted, its enactment was entirely within the power conferred upon Congress to legislate for the government of the District of Columbia. *Moses* v. *United States,* 16 App. D. C. 428.

The opinion delivered in that case sufficiently meets the argument in the case at bar and renders further discussion or citation of authority unnecessary.

3. The next assignment presents a question on the construction of the act.

The contention that " the act is designed to prevent the emission of smoke only so far as the adoption of smoke consuming, or other devices can secure such prevention," is founded on the fifth section, which reads as follows: ' " That no discrimination shall be made against any method or device which may be used for the prevention of smoke and which accomplishes the purposes of this act."

We cannot concur in this view of the intention of Congress.

The plain purpose of the act is to prohibit the emission of certain dense, black or gray smoke, described in the first section, from the stacks or chimneys of certain classes of buildings. Section 2 defines the persons who may be punished for the emission of such smoke. Section 3 declares each day's violation of the act a separate offense and prescribes the punishment therefor. Section 4 provides for the detail of inspectors from time to time, who shall under the supervision of the health department of the District, cause the prosecution of violators of the law.

As was said in *Moses* v. *United States, supra,* p. 440, in sustaining the exclusion of evidence tending to show that there was no known appliance that would prevent the emission of dense black smoke in starting fires, coaling, or " raking down," in furnaces consuming bituminous coal: " That there may be no smoke-consuming appliance that will, under all circumstances, prevent the nuisance, is not a matter of relevancy. The facts concerning them were presumably within the knowledge of Congress also when it took action; and no provision has been made for their use. The use of smokeless fuel instead may have been expressly contemplated."

In section 5, Congress, assuming that different appliances might possibly be found to consume all of the smoke of furnaces skillfully constructed and operated, recognizes the probability of their use in instances rather than a change to smokeless fuel, and seeks merely to provide against possible

unjust discriminations between such devices on the part of the inspectors charged with the institution of prosecutions for violations of the law, provided only that the device adopted be one " which accomplishes the purposes of this :act."

The controlling purpose of the act, as before pointed out, .is in the first section, and had Congress intended merely to require the use, in all stationary furnaces, of some one of the numerous smoke-consuming appliances which had been invented and put upon the market, it would have so declared instead of absolutely prohibiting the emission of the de-·scribed smoke under any and all circumstances.

4. The last assignment of error goes to the refusal of the court to permit the plaintiff in error to testify on his own behalf as recited in the bill of exceptions.

Again, we are of the opinion that the court did not err.

In the first place, the question as to how much knowledge a witness must possess of a certain science or art in order that his opinion shall be competent evidence, " is a matter which, in the nature of things, must be left largely to the discretion of the trial court, and its ruling thereon will not be disturbed unless clearly erroneous." *Chateaugay Iron Co.* v. *Blake,* 144 U. S. 476, 484.

It is very far from clear that the witness was competent to testify as an expert in respect of the matter of inquiry.

On the contrary we are inclined to the opinion that it is more clear that he was not. He was the real estate officer of the trust company and as such had general charge of the building, and, presumably, of all buildings belonging to, or under the control of his employer. It was in this capacity and not as a mechanical engineer that he had charge of the furnace and the operation of the building. It does not appear that he had charge of the actual operation of the fur-·nace, or that he was competent to operate it in person.

The question to be elucidated was a practical one, that re-·quired practical knowledge and experience on the part of the witness to enable him to express a competent opinion. The

facts of the witness' qualification are analogous to those in the case of *Chateaugay Iron Co.* v. *Blake, supra.*

There the witness was offered to express an opinion as to the daily crushing capacity of an ore mill, and his exclusion was sustained on appeal. As said by Mr. Justice Brewer, who delivered the opinion of the court: " This witness testified that he had been general manager of the defendant company for six years, and that he was at the mill as often as twice a month, and usually went there once a week. He does not appear to have been a practical machinist, or to have had any special knowledge of mining or crushing machinery. He was not superintendent of the workings of the mine or of the machinery, and does not claim to have been there regularly, or, indeed, oftener than once a week, and, as general manager, was apparently more employed in the financial and outside business affairs of the company than in the details of the mining or the practical workings of the machinery."

In the case at bar, moreover, the recital is, that the witness " had given the subject of the abatement of smoke examination, and was qualified to speak from his experience in reference to the matter."

Instead of expressing his own opinion of his qualification, it was incumbent upon him to state the facts and circumstances tending to show the nature and extent of his knowledge and experience, so that the court could determine his competency therefrom.

But had the witness been shown, or admitted to be an expert in the practical operation of furnaces and smoke-consuming appliances, his statement, in the terms of the offer, would be inadmissible for other reasons.

That there can be no combustion of any kind of fuel without the emission of " *any smoke whatever* " does not meet the question.

All smoke is not prohibited, but only the thick or dense black or gray smoke which the statute declares to be a nuisance.

The further offer to testify that it is physically impossible to comply with the act of Congress prohibiting the dense black or gray smoke, is the mere statement of a conclusion — a broad generalization without giving, or offering to give the facts upon which it is founded, or by which its soundness and weight can be tested.

The somewhat startling proposition, that there is no accessible fuel of any description whatsoever which can be burned in a stationary engine furnace of proper construction and skillful operation, in co-operation with some approved smoke-consuming device, without the emission of the prohibited character of smoke, is propounded without the suggestion of a single fact, or attested experiment in its support. It was not even proposed to show that the furnace in question was of skillful modern construction and supplied with a proper smokestack, or that an approved smoke-consuming device had been attached to it, much less, that reasonable and satisfactory experiments had been made with different kinds of ordinary fuel in an attempt to comply with the law.

As the operation of the furnaces in large buildings for purposes of heating, power, etc., is unquestionably necessary to the enjoyment of their ownership, any regulation with which it would be impossible to comply, by the use of any known and accessible fuel, would be beyond the power of Congress to enact. But an act of Congress in the exercise of its ordinary, police power, as this appears to be on its face, is not to be lightly set aside as unreasonable and oppressive. The conditions which would justify such an exercise of the judicial power of review must be clearly established.

The establishment of these conditions would necessitate a wide range of inquiry embracing the following, among others possibly:

(1) What is the condition of the particular furnace or furnaces and smokestacks under consideration in respect of construction, maintenance and operation?

(2) Have any well known or approved smoke-consuming

devices been applied in a manner and under conditions favorable to their operation?

(3) What character and quality of fuels are attainable in the market and have been used?

(4) Results of experiments made in good faith with the different fuels in connection with properly constructed furnaces and approved smoke-consuming appliances.

Evidence going to these points and perhaps others of like nature, should be received if offered on behalf of a defendant; and in connection with such as might be elicited by cross-examination, or introduced on behalf of the prosecution, would present the necessary facts on which the reasonableness of the statute may be fully and fairly determined.

The evidence offered in this case fell far short of these requirements, as we have seen, and was properly held inadmissible.

There being no error in the proceedings, the judgments will be affirmed, with costs.　It is so ordered.　*Affirmed.*