## JAMES BAIRD CO., Inc., v. BOYD.
### No. 2969.

Circuit Court of Appeals, Fourth Circuit.
June 10, 1930.

John M. Robinson, of Charlotte, N. C. (Hunter M. Jones, of Charlotte, N. C., on the brief), for appellant.

J. F. Flowers, of Charlotte, N. C. (T. C. Guthrie, Sr., and Marvin L. Ritch, both of Charlotte, N. C., on the brief), for appellee.

Before PARKER, Circuit Judge, and BAKER and SOPER, District Judges.

SOPER, District Judge.

The complaint in this suit was filed by the administrator of the estate of H. K. Rust, deceased, against the James Baird Company, a corporation, and comprises two causes of action. In the first thereof, it is charged that on July 1, 1927, the deceased was employed by the defendant corporation upon the work of remodeling and repairing an office building in the city of Charlotte, N. C., and, in the course of his employment, received serious and permanent injury, which caused him great pain and anguish, and eventually, to wit, on May 5, 1928, resulted in his death. It is alleged that, whilst he was working on one of the floors of the building, a large piece of concrete fell from a point above and struck him on the back, and that the accident was caused by the failure of the defendant to provide him with a safe and suitable place in which to work, in that it failed to protect him from the danger of falling rubbish and other substances which had been detached and were lying loose in and about the floors and walls of the building, adajcent to an opening which had been made for an elevator shaft. The administrator sought to recover the sum of $25,000 for the loss of earning capacity and the pain and suffering endured by the deceased in the interval between his injury and his death. The second cause of action was based upon the same circumstances and claimed the sum of $50,000 for damages occasioned by the death of the deceased.

Certain issues of fact having been submitted to the jury at the trial, it was determined that the deceased was injured on or about July 1, 1927, by the negligence of the defendant, and that the administrator was entitled to recover the sum of $3,423 on account of damages suffered by the deceased in his lifetime as the direct result of his injuries; but it was also determined that these injuries were not the cause of his subsequent death. In short, the plaintiff successfully maintained the first cause of action, but failed in the second. The more important question on this appeal is whether, under the North Carolina statutes, the administrator of a deceased person, who has suffered personal injuries resulting in death, caused by the negligence of another, may recover damages from the wrongdoer for the losses sustained by the deceased in his lifetime as a consequence of his injuries. It is admitted that, in such a case, the administrator may recover pecuniary damages for the losses occasioned by the death, but it is contended that this is the only action authorized by the North Carolina law, and that no cause of action lies and no recovery may be had for the damages suffered by the deceased in the interval between the injuries and the death. At first glance it would seem that the question proposed does not arise in this case, since the jury found that the deceased did not die by reason of the injuries he received. But the defendant, at the outset of the case, upon the reading of the pleadings and before the jury was sworn, moved the court to strike out those parts of the complaint wherein the pain and suffering of Rust subsequent to his injury and prior to his death were described, and further requested the court to hold as a matter of law that the administrator could not recover damages therefor. These motions were denied, and, for the purposes of this case, it will be assumed that the point was raised in the same manner as if a formal demurrer to the first cause of action had been filed.

The contention of the defendant is that the first cause of action did not state a case under the North Carolina law, since it included the allegation that the injury resulted in death. The relevant statutes of North Carolina, to be found in the North Carolina Code of 1927 as sections 159, 162, and 163, are set out below. It will be seen that section 159 provides that, upon the death of any person, all demands whatsoever and right to prosecute any action existing in his favor, except as thereinafter provided, shall survive to the executor, administrator, or collector of his estate. Section 162 provides that the rights of action which do not survive are causes of action for libel, slander, false imprisonment, assault and battery, and causes where the relief sought could not be enjoyed after death. Section 163 provides that executors and administrators shall have actions in like manner as the first testator or intestate might have had against any person, with the same exceptions.

Sections 160 and 161 constitute the statutory counterpart in North Carolina of Lord Campbell's Act, and provide, in substance, that when the death of a person is caused by the wrongful act of another, such as would give the injured party, had he lived, an action for damages, the person that would have been liable shall be liable to an action for damages to be brought within one year after such death, by the executor, administrator, or collector of the decedent; the amount recovered not to be applied as assets, but to be disposed of in the same manner as personal property in case of intestacy. The damages are limited to compensation for the pecuniary injury resulting from the death.

Section 162, subsection 2, was put in its present form by the Act of the General Assembly of North Carolina of 1915, c. 38, prior to which it provided that the following rights of action should not survive: "2. Causes of action for false imprisonment, assault and battery, or other injuries to the person, where such injury does not cause the death of the injured party." Revisal N. C. 1905, § 157, subsec. 2.

Relying upon the phraseology of this section as it formerly stood, the defendant contends that the act of 1915 did not change the law in so far as injuries causing death are concerned, but provided merely for the survival of causes of action based upon injuries to the person which do not cause the death of the injured party, since the amendment to the law merely omitted the phrase "or other injury to the person where such injury does not cause the death of the injured party." Hence the defendant says that, when death does result from an injury, there is only one cause of action, to wit, the action for wrongful death prescribed by sections 160 and 161 of the North Carolina Code.

But it is clear, we think, from the decision of the Supreme Court of North Carolina in Bolick v. Railroad Co., 138 N. C. 370, 50 S. E. 689, 690, that the defendant has not correctly interpreted the terms of section 162 as it existed prior to 1915. In that case an injured party had brought an action to recover damages for his injuries, but had died before the case was tried. After his death, his administrator, alleging that the injuries had caused the death, asked to be substituted as party plaintiff in order to prosecute the action on behalf of the estate of the decedent. When confronted with the provisions of the statute as it then stood, the administrator contended that his decedent's action had not abated because his injuries had caused his death, whereas the statute merely declared that a right of action for personal injuries did not survive where the injuries did not cause death. But the Supreme Court of North Carolina rejected this contention. It declared that the phrase "where such injury does not cause death" meant simply "unless such injuries shall cause" the death of the injured party. The court said:

"We understand the [quoted] words * * * not as a provision by implication that such actions survive, but as a recognition that, under Code, § 1498 [now section

"159. *Action survives to and against representative.*—Upon the death of any person, all demands whatsoever, and right to prosecute or defend any action or special proceeding, existing in favor of or against such person, except as hereinafter provided, shall survive to and against the executor, administrator or collector of his estate."

"162. *Actions which do not survive.*—The following rights of action do not survive:

"1. Causes of action for libel and for slander, except slander of title.

"2. Causes of action for false imprisonment and assault and battery.

"3. Causes where the relief sought could not be enjoyed, or granting it would be nugatory, after death."

"163. *Right of action survives to succesors.*—Executors and administrators shall have actions in like manner as the first testator or intestate might have had against any person, his executors and administrators, in all cases, except where such actions, being commenced, are not allowed by statute to be revived on the death of any party."

160], in case of the death of the injured person from such injuries an action is now expressly given by statute. * * * "

"If an action could be maintained, notwithstanding the death, for the injuries resulting in death, there would be two actions for the death, one accruing to the administrator, the recovery wherein to be applied as general assets, and the other, also by the administrator, the recovery in which would be applied "not as assets" but would go in distribution to the next of kin. In the first case the death would be the proof, and the climax of the injuries sustained and we should have two actions by the same party, the administrator, to recover upon substantially the same cause of action."

We think that the effect of the subsequent legislation passed in the year 1915 was to bring about this precise result. Thereby subsection 2 of section 162, which previously excepted all causes of action based upon personal injuries from the saving action of section 159, was stricken out, and thenceforth all such rights of action survived after the death of the injured party to the representatives of his estate.

The defendant also contends that in Bolick v. Railroad Co., supra, the North Carolina court decided that in case of death, a pending action for personal injuries is merged in the case of action for the death. In concluding its opinion the court said: "The plaintiff relies upon Schlichting v. Wintgen, 25 Hun [N. Y.] 626, in which it was held, 'It is no defense to an action to recover for the wrongful killing of the intestate that he had in his lifetime recovered a judgment against the same defendant for the personal injuries which resulted in his death.' We think this was correctly held, for there the death was a cause of action accruing subsequent to the judgment; but when the death occurs pending an action for personal injuries, of which the death is the greatest, we think such cause is merged in the cause of action for the death, and that the only remedy under our statute is that given under section 1498, and that the pending action for the lesser injuries abates."

This conclusion, however, was clearly an obiter dictum, and the court declined to follow it in the latter case of Edwards v. Chemical Co., 170 N. C. 551, 87 S. E. 635, 636, L. R. A. 1916D, 121. It then held that, when an injured party has received full compensation in his lifetime for an injury which resulted in his death, no right of action for further damages arising from the same injury will lie after his death, notwithstanding the provisions of the death statute hereinbefore mentioned. In so deciding the court followed the overwhelming weight of judicial authority. See Mellon v. Goodyear, 277 U. S. 335, 48 S. Ct. 541, 72 L. Ed. 906. But this holding was not inconsistent with the existence at the same time of two causes of action by the representative of the estate of the deceased, one for injuries sustained during his lifetime, and the other for the pecuniary loss occasioned by his death, provided that the deceased in his lifetime has not recovered or made settlement with the wrongdoer for the injuries inflicted. In Edwards v. Chemical Co., the court quoted at length from Littlewood v. Mayor, etc., of City of New York, 89 N. Y. 24, 42 Am. Rep. 271, and, amongst other things, the following: "There can be no doubt that the Legislature had power to create the double liability contended for, nor would it necessarily involve any inconsistency. The damages of the party injured are different and distinguishable from those which his next of kin sustained by his death, and no double recovery of the same damages would result. But it is equally clear that the Legislature might give to the representatives the statutory right of action only as a substitute for the damages which the deceased was prevented by his death from recovering, and the question now is, what was their intention in this respect?"

The court also cited the decision of the Court of Appeals of Maryland in Melitch v. United Rys. & Elec. Co., 121 Md. 457, 88 A. 229, L. R. A. 1915E, 1163. In the earlier case of Stewart v. United Elec. Lt. & Power Co., 104 Md. 332, 65 A. 49, 8 L. R. A. (N. S.) 384, 118 Am. St. Rep. 410, that court had decided under the Maryland statutes that personal representatives of a deceased may commence and prosecute any personal action which the deceased might have brought in his lifetime, and that this action may be taken, notwithstanding the Maryland statute corresponding to Lord Campbell's Act. It was held that in Maryland there are two separate and distinct causes of action arising from the same wrongful act. Subsequently, in Melitch v. United Rys. & Elec. Co., the same court decided that when a party injured by the negligence of another dies, but, before dying, executes a release for all claims that he had or might have had by reason of his injury, no suit under the death statute can be maintained. But the court expressly said that there was nothing in its decision in con-

flict with its earlier ruling in the Stewart Case.

From this consideration of the authorities, we are convinced that the first cause of action in the complaint in this case set out a valid claim under the North Carolina law. The following note appended by the commentator to section 159 of the North Carolina Code of 1927 seems to us to be a correct statement of the law: "But this provision of section 162 [as it stood before 1915], no more exists. The inference, therefore, is that such actions, at least those based on a tangible physical injury do survive, under the broad provisions of this section, irrespective of whether the injury has caused death or not; and that the provisions of section 162 specifying the actions which will not survive are limited to actions therein designated."

Upon the merits of the case the defendant asserts (1) that there was no evidence of negligence on the part of the defendant and (2) that the deceased assumed the risk of his injury, and consequently, on both grounds, the court erred in refusing to direct a verdict in the defendant's favor; and also (3) that wrongful and prejudicial rulings on questions of evidence took place at the trial.

The evidence on behalf of the plaintiff showed that on July 1, 1927, Rust was engaged as a brick mason in the building, and while working on the fifth floor, near an open shaft 7x21 feet in dimension, which had been cut in the floors to accommodate the elevators, a piece of concrete of considerable size, which had been torn out of the structure by laborers on an upper floor, fell down the shaft, hit a plank on the sixth floor, and, being deflected thereby from the shaft, struck the plaintiff in the middle of his back as he was bending over at his job. Rubbish and débris, which had accumulated during the reconstruction of the building, were permitted to lie around the openings in the floors and laborers were sometimes instructed to throw things down the shaft. The evidence was conflicting as to whether there were barriers or guards around the openings to prevent articles from falling into the shaft by accident. A number of witnesses testified on behalf of the plaintiff that there was no protection of any sort placed around the openings on the several floors of the building. On the other hand, testimony was given by the superintendent in charge of the work that on each floor there was a foot board 8 or 10 inches high placed around the edges of the shaft, and also a guard rail 2x4 inches about 3 feet above the floor, and that such precautions were taken in accordance with the prevailing custom for the safeguarding of openings of the character described. There was no other evidence of custom in the case.

The position of the defendant under these circumstances is that, since the deceased workman was occupied between the floors of the building, with a protecting ceiling over his head, no precaution was necessary to protect him from articles which might be thrown or accidentally fall through the openings in the floors, and that, in any event, the uncontradicted evidence shows that the defendant took the precautions customarily followed in the trade, and therefore was not guilty of any negligence, and the court should have directed a verdict in its favor.

■ The District Judge in his charge called attention to the conflicting evidence as to the existence of barriers or protections around the openings in the floors, and instructed the jury, in substance, that, if they should find that the elevator shaft was open from the top to the bottom of the building, and that there was no plank around the shaft to prevent articles from falling through, and that a man of ordinary prudence under the circumstances would have protected the elevator shaft by a plank or guard, and that the failure to do so was the direct cause of the injury to Rust, then the jury should find in favor of the plaintiff on the issue of the defendant's negligence; but that, on the other hand, if the jury should find that, as testified by the defendant's superintendent, the openings in the floor, in accordance with the custom, were protected by a plank so as to prevent the falling of articles into the holes, and that such protection was what a man of ordinary prudence would do under like circumstances, then there was no negligence on the part of the defendant, and the verdict should be in its favor.

■ We think that these instructions of the District Judge were clearly correct. There is no need for the citation of authority to the effect that the obligation of the master to provide a safe place for his employees to work is an absolute obligation and may not be delegated to those in his employ; and, while customary methods may be considered in determining whether or not this duty has been properly performed, they do not constitute a controlling test, and it should be left to the jury to determine whether, under the circumstances of the case, the provisions made by the employer were such as a person of ordinary prudence would have made for

the safety of his workmen. Texas & Pacific Ry. Co. v. Behymer, 189 U. S. 468, 23 S. Ct. 622, 47 L. Ed. 905. This question was fairly submitted to the jury upon the conflicting evidence before them, and there was no error in the charge of the court in this particular.

 The same conclusion must be reached on the question of the assumption of the risk. The defendant prayed the court to instruct the jury that the deceased assumed the risk of his injury because the evidence of the plaintiff showed that the workmen had knowledge of the accumulation of débris in the neighborhood of the openings on the several floors and of the falling of articles into the shaft from time to time. But the law is clear that, if the risk, not naturally incident to an occupation, arises out of the failure of the employer to furnish his employees a safe place to work, an employee is not treated as assuming the risk "unless defect and risk alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them." Seaboard Air Line Ry. v. Horton, 223 U. S. 492, 504, 34 S. Ct. 635, 640, 58 L. Ed. 1062, L. R. A. 1915C, 1. We do not think that in the case at bar the risk to an employee working between the floors from objects falling down the shaft was so obvious and clear that it was the duty of the court to instruct the jury on this account to bring in a verdict for the defendant.

█ A fellow workman of the deceased was allowed, over the objection of the defendant, to testify that the defendant could have safeguarded the place where the deceased was working by placing boards temporarily over the openings in the floors, and that, if this had been done, particles of building material could not have fallen down the shaft. The defendant urges that by this testimony the jury were led to apply too severe a criterion to the defendant's conduct and to have measured it in retrospect after the accident occurred rather than from the standpoint which the defendant occupied at the time of the accident, when it was obligated only to exercise reasonable care and foresight under all the circumstances. But we think there was nothing prejudicial in the evidence. Indeed it gave to the jury no information. The case obviously turned upon whether there was negligence in the manner in which the defendant dealt with the open elevator shaft. It was obvious to the jury, without testimony of any kind, that, if the openings had been temporarily covered, débris could not have

fallen through. But the jury was not told that this was the duty of the defendant, but on the contrary they were instructed, in accordance with the law, that the plaintiff could not recover unless the defendant had failed to take the precautions which a man of ordinary prudence under like circumstances would have taken.

 The defendant also complains of the rejection by the court of certain testimony offered by the defendant to prove that at the time of the accident, it was not customary in the building trade to place any shelter or other safeguard over elevator shafts, similar to the one in this case, for the protection of workmen in or about the building and not in the shaft itself. The witness offered for this purpose was a young man twenty-four years of age, who was the timekeeper and had charge of the office work on this particular job. He had had seven or eight years' experience with the defendant company, a brief experience with another construction company during his summer vacations from school, and had read certain literature relative to the safeguards taken in building construction. The court rejected the testimony apparently on the ground that in its opinion the witness was not sufficiently qualified and also because his testimony should not be based in part upon his reading, but should be confined to his personal experience. How much knowledge a witness must possess to justify the reception of his testimony as an expert is a matter which must be left largely to the discretion of the trial court, and its ruling thereon will not be disturbed unless clearly erroneous. Chateaugay Iron Co. v. Blake, 144 U. S. 476, 484, 12 S. Ct. 731, 36 L. Ed. 510. But even if we assume that in the instant case the testimony of the witness should have been received, it does not appear that the defendant has been prejudiced by its rejection. The very next witness produced by the defendant was its superintendent of construction, who had been in construction work for thirty-five years. He testified, as we have seen, that the general custom of the trade under circumstances like those in this case, required a footboard around the edge of the shaft and a narrow handrail 3 feet from the floor, and that these precautions were taken by him. In view of this evidence, we do not think that the admission of the timekeeper's testimony could by any possibility have affected the result.

 The defendant also complains of the admission, over objection, of certain evidence

584

given by the widow of the deceased at the trial. She testified that some time during the day of July 1, 1927, her husband returned from work, and said he had come home because he had hurt his back. It is urged that this hearsay evidence was particularly prejudicial to the defendant because it tended to break down the defense that the deceased was not injured while working on the defendant's building. The defendant produced its pay roll in order to prove that on July 1, 1927, the plaintiff's witnesses, who said that they saw the accident, were not on the job. Other evidence of the defendant showed that the deceased made no report of his injury to the defendant; that prior to July 1, he was suffering from rheumatism and lumbago, and also that, according to his own statement, he had been hurt on an entirely different job.

That part of Rust's statement to his wife, that he had hurt his back on July 1, was inadmissible as hearsay; but after a careful review of all the testimony, we do not think that on this account the judgment of the trial court should be reversed. The objectionable testimony did not comprise a description of the manner in which the injury had been received, but was limited to the mere fact of injury on the date in question. The trial took place more than two years after the events under examination, and some uncertainty as to dates might well have been expected. The names of the eye witnesses of the plaintiff, although not on the pay roll on July 1, did appear on nearby dates. The deceased had worked steadily on the job for a considerable period prior to the date when he returned home, complaining of his back, and, after that day, he never worked again. A physician who examined him on July 4 found that his back was injured in the spinal region, and later, in the same month, he was put in a plaster cast. The testimony as to the disclosures of X-rays was conflicting, but pictures taken in the following year showed an old fracture of the right articular facet of the fifth lumbar vertebra. Whether or not the deceased was injured, as the witnesses on his behalf testified, was an issue of fact to be determined by the jury in view of all the evidence. The jury determined the issue in the plaintiff's favor, and we cannot think that, if the very small additional evidence given by the widow had been omitted, the verdict would have been different. It is therefore our view that there was no prejudicial error in the ruling of the court.

The judgment of the District Court will be affirmed.

H. T. Gray, of Jacksonville, Fla., for appellants.

Elvin Swarthout, of Grand Rapids, Mich. (Benn M. Corwin, of Grand Rapids, Mich., on the brief), for appellees.