**OLSEN   v.   REALTY HOTEL CORP.**
**No. 103, Docket 22811.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 6, 1954.

Decided March 1, 1954.

Alfred S. Julien, New York City, for plaintiff-appellant.

Reilly & Reilly, John G. Reilly, New York City, and Harold V. McCoy, New York City, of counsel), for defendant-appellee.

Before CHASE, Chief Judge, CLARK, Circuit Judge, and GIBSON, District Judge.

CHASE, Chief Judge.

This suit was brought to recover damages for the death of Oscar B. Olsen who died while bathing in a Turkish bath operated by the appellee in the City of New York. Trial was by jury and the appeal is from a judgment on a verdict for the defendant. Questions are raised as to the admissibility of evidence and the correctness of the charge.

It appeared that Mr. Olsen had arrived at the bath while very drunk and had been given needed assistance by attendants up to the point where he went into the steam room which was separated from an adjoining part of the bath by a plate glass partition. He was allowed to go in there alone and in about ten minutes was found dead on the floor. Negligence in permitting him to enter and to be alone in that room was claimed to have aggravated a pre-existing coronary sclerosis and caused his death.

The appellant called a witness who had for about fifteen years been the physical director at a Turkish bath in New York and had been connected with such baths for about thirty-five years. He was asked what, as a matter of custom and practice, were the things done for "an intoxicated person who enters into a bath, a Turkish bath." Upon objection being made, the court requested counsel "to lay a foundation upon what he bases it, his information or knowledge." Then the witness testified that during his connection with Turkish baths he knew about some, not many, intoxicated customers who had been admitted to the steam room, "maybe two or three occasions" in a year. In response to inquiry by the court, he testified that he had on occasions talked with men in that business in New York about what they did with drunken persons in steam rooms and named two such occasions, the last being in 1947. He was then asked "Whom else did you talk to?" His answer was interrupted by another question and was, as given, "Well I can't answer that for all of New York; I have not been in every place. But I have had quite some experience to that extent, that if a man comes in drunk * * *."

What may be the custom and practice in Turkish baths in New York City in respect to the care and attention given intoxicated patrons who are admitted to steam rooms is a question of fact and evidence that there was a certain, uniform practice not to permit such patrons to go into steam rooms unattended or, if permitted to do so, that they were to be kept under observation would have been admissible to show a fixed standard of conduct in the business which would have been a relevant factor, for consideration by the jury, on the question of negligence. But this witness by his own admission was incompetent to testify to that. His knowledge on that subject was confined to his own experience in a few instances. That was an inadequate basis in fact to show a general custom. Garthe v. Ruppert, 264 N.Y. 290, 190 N.E. 643, 646. In so far as his evidence may be treated as that of an expert on the care and attention which such patrons should be given in Turkish baths his qualifications were so doubtful that the exclusion of his testimony was not an abuse of discretion. Where no abuse of discretion is shown the determination of the trial judge as

to the qualifications of an expert witness is controlling on review. Chateaugay Ore & Iron Co. v. Blake, 144 U.S. 476, 12 S.Ct. 731, 36 L.Ed. 510; Spring Co. v. Edgar, 99 U.S. 645, 25 L.Ed. 487; Meiselman v. Crown Heights Hospital, 285 N.Y. 389, 34 N.E.2d 367.

When the deposition of Reddy, a bath attendant who helped the decedent to his seat in the steam room, was read certain parts were excluded. Reddy had testified that the instructions given attendants were not to let in drunken persons who were not regular customers. Regular customers, however, could be taken in and put to bed if in "a bad state" and "if the person is not too bad, and say, is able to handle himself and walk around, it is all right to let those people in the baths." But they were well watched. Then the following question and answer was excluded.

"Q. You are mindful of the fact that a person who is drunk cannot control himself? A. That is right, and we watch most of the time to see that they do not annoy other people."

Obviously that showed nothing as to care taken for the protection of the intoxicated person and was immaterial. Other questions and answers excluded were of no more importance and their exclusion need not be noticed for that reason.

The medical evidence of the appellant tended to show that the death was caused by the effect of the steam and temperature in the heated steam room upon a person with his pre-existing heart condition while in his state of intoxication. That of the appellee tended to show that there was no such causal connection. The appellee offered in evidence the record of a physical examination of the decedent made about ten months before his death in conformity with the routine practice of his employer, the New York Central R. R. Co., and kept as one of its records in the regular course of its business. Upon objection being made, counsel for the appellant stated, "I am not interested in anything but the heart." After it had been conceded that the record was one kept in the regular course of business the portion relating to the heart was admitted. It was a two-line statement that the condition of the heart was normal. The judge then instructed the jury as to the weight to be given the evidence saying, "It is something which you will have to determine and you will, therefore, in determining it, consider the fact that we don't know what type of examination was made; we don't know the conditions under which this doctor examined the patient. We don't know whether that is something that the patient told him or whether that is something the doctor found upon examination. But there is a proposition of law that records made in the regular course of business are admissible; the weight to be given it, however, is a matter for the jury." Failure to admit the entire record is now urged as error. Though it was, to be sure, offered at first in its entirety, the statement later by the attorney that he was interested only in the part relating to the heart, coupled with the absence of any objection to the refusal to admit more than the portion relating to the heart was a fair indication to the trial judge that the offer was to be treated as so limited. In view of that, objection to make it clear that there was no acquiescence in the ruling was necessary even though exceptions to rulings are no longer needed to save questions for review in an appellate court. Rule 46, Fed. Rules Civ.Proc. 28 U.S.C.A. Moreover, our attention has not been called to anything in the record which, if it all had been admitted, would have made the judge's statement to the jury, above quoted, inaccurate or incomplete.

Finally we turn to the appellant's requests to charge. Those now relied on were that the fact that the decedent may have had coronary sclerosis before "does not excuse the defendant if its negligence aggravated the trouble and hastened it to a fatal result" and the similar one in substance that the defendant could not "escape responsibility for

its negligence even if Mr. Olsen's coronary sclerosis might have resulted in his death at some other time."

■ That there was substantial compliance with these requests and that the jury was given to understand what the decisive issues of fact were is shown by the following quotation from the charge:

"In considering the problem of possible negligence of the defendant, I charge you that if you find that the deceased had coronary sclerosis before his death, this fact will not excuse the defendant from liability if you find that the cause of death was the fact that the defendant permitted the deceased into the steam room or because he was left unattended in the steam room.

"In short, as this case has unfolded, you are called upon to determine whether the defendant failed to use reasonable care under the circumstances in permitting Olsen into the steam room or in permitting him unattended there, and, if so, that is, if the failure to use reasonable care under these circumstances, was it this act of negligence which brought about his death?"

In the light of what has just been quoted the perhaps overly cryptic charge as to proximate cause which the appellant now insists was reversible error appears harmless. It was, "If you find the defendant negligent, then that negligence was the proximate cause of the death, if, and only if the death is traceable to the defendant's negligence without the intervention of any other independent legally operative event." Moreover, no objection to this part of the charge was made in compliance with Rule 51, F.R.C.P.

■ Like absence of objection to the charge as to the weight the jury might give to the interest of a witness in the outcome of the case in determining the question of credibility precludes raising that issue now; though we might say in passing that the charge in this respect was adequate.

Judgment affirmed.