## HARRISON, JUDD & Co. vs. CROCKER.

*(1) Exceptions.  (2) Waiver of breach of warranty by giving notes for full price.  (3) Instructions as to burden of proof.*

1. On a single exception to a refusal to give two instructions asked by the appellant, this court can only consider whether *both instructions, taken together,* are a correct statement of the law.
2. Defendant gave his notes here in suit for the full purchase price of a reaper, *after* he had used and tested it during one season; but defends against the notes for breach of warranty as to the quality and capacity of the reaper. There was evidence that he gave them at the solicitation of plaintiff's agent, to enable the latter to settle with his principals, and upon a promise that it should make no difference in his liability. *Held,* that the giving of the notes was not *per se* a waiver of the breach of warranty.
3. There being conflicting evidence as to whether defendant used ordinary care and skill in testing said reaper, the jury were instructed that "the presumption is that the machine was operated with ordinary care and skill, and, unless the contrary be shown, the jury must assume such to be the fact;" and that, "in the absence of testimony to the contrary, the presumption would be that ordinary care and skill were used" in this case. *Held,* that in the actual state of the proofs, the question what presumption would arise in the absence of all evidence, was not involved in the cause; the question of fact should have been submitted to the jury upon the evidence; and the instructions were erroneous, because calculated to mislead the jury to plaintiff's prejudice.

APPEAL from the Circuit Court for *Dunn* County.

Action on two promissory notes of the defendant, dated August 22, 1870, for $100 each, with interest, payable June 1, 1871, and June 1, 1872, repectively. Answer, in substance, that the notes were given for a combined reaper and mower sold by plaintiffs, through their agent, to defendant, and war-

ranted to be sound and perfect in all its parts, and capable of doing as good work as any other similar machine in use in this state; and that such warranty was fraudulent, and the machine worthless. Defendant also set up a counterclaim for damages from such breach of warranty, in the sum of $200. Reply, in denial of the counterclaim.

On the trial, defendant was permitted, against objection, to open and close. It appeared that the machine was purchased before the harvest of 1870, with warranty as alleged, and that it was put up by one Wallace, plaintiff's agent. Defendant's evidence tended to show that the machine was run by persons who had had some experience in working with such machines; and that it did not do good work as a reaper, and broke down with great frequency, and was of little or no value. Defendant testified: "Giving the notes was delayed sometime, as I was not satisfied. Mr. Wallace claimed the company were crowding him up, and said it would make no difference, and I gave the notes." "Wallace told me that in order to make it all right with the company, I had better give the notes, and he would make it all right with me about the machine; that if it was not all right, he would make it right; and I gave the notes." It appeared from the evidence that the machine had been used by defendant at least three years after his purchase, and was still on his farm. Defendant testified that when it was purchased, nothing was said about returning it, and that he never had offered to return it. Mr. Wallace, called as a witness for the defendant, testified on his cross examination: "The defendant found no fault with the machine at the time he gave the notes. I don't remember my saying anything about his keeping the machine another year when I took the notes. I supposed it was a sale, and the warranty fulfilled; that is the way I understood it when I took the notes. The reason why I did not get them sooner was that I could not find the defendant ready. He made no objection to giving the notes." The same witness, being called for the plaintiffs, tes-

fied: " I asked defendant for the notes so that I could settle with the company, and he gave them to me. That is all the conversation we had."

There was some evidence tending to show that after the first note fell due the defendant promised to pay it, although he then complained of the machine.

For the plaintiffs, one Munden, who acted as their agent instead of Wallace in 1871, testified that in June of that year defendant applied to him for certain " extras " for the machine in question, and complained that he had had trouble with it, and it had frequently broken. " I told him I thought the pitman box was not screwed tight. If it was loose, the sickle eyes would break as fast as he could put them in. * * I saw the machine that year after harvest, in defendant's field, and found it in running order, except that the pitman box was loose. You could chuck it around so that it would break sickle eyes as fast as they were put in. That is all I discovered out of the way with it. * * Defendant complained of the sickle eyes breaking; he made no complaint about the rake, only about the sickle eyes. I said the cause of it was the pitman box being loose. * * I saw the machine. It could be put in order in ten minutes, and was worth as much as ever: $200 and freight. * * If the boxes are kept tight, the sickle eyes are not liable to break. The nuts are liable to get loose, and want to be watched. * * I do not consider that the way I saw the machine, it would be running it with competent care and skill."

To rebut this evidence, the person who drove the machine the first season for defendant, testified that the nuts to the boxes were kept screwed up, and he took pains with it, and did as near what Mr. Wallace told him as he knew how. The person who ran the machine the second year, also testified that he " kept the boxes tight."

The plaintiffs requested the court to charge the jury as follows: " 1. That a warranty that a machine will do good work

is upon the condition that it shall be well operated and managed; and before the jury can find that this machine did not do good work, they must find that it was well operated and managed. 2. That if any defect existed in the machine after the sale, which defendant claimed was a breach of the warranty or representations made at the time of sale, it was defendant's duty to inform the plaintiffs of their existence at the time of giving the notes; and if defendant gave the notes without claiming any deductions from the contract price on account of them, or making any new contract respecting the machine, then the giving of the notes was a waiver of the warranty or fraud, if any, and the jury must find for the plaintiff for the amount of the notes and interest." The court refused so to charge. Certain instructions given to the jury as to the presumption that defendant had operated the machine with ordinary care and skill, are sufficiently stated in the second paragraph of the opinion, *infra.*

The jury found that plaintiffs had no cause of action; a new trial was denied; and plaintiffs appealed from a judgment on the verdict.

The case was submitted by both sides on briefs.

*A. Meggett,* for appellants, contended, among other things, 1. That there is no presumption that defendant operated the machine with ordinary care and skill, or that he employed suitable persons to operate it; and he should have made proof of the fact at the trial. *Chamberlain v. Railway Co.,* 7 Wis., 431; *Lehman v. City of Brooklyn,* 29 Barb., 236; *Ford v. Simmons,* 13 La. Ann., 397; *Great Western R'y Co. v. Bacon,* 30 Ill., 347. 2. That in view of defendant's giving the notes after a trial of the reaper for a whole season, without condition or complaint about the machine, and his subsequent promise to pay, the second instruction asked by plaintiffs should have been given. *Boothby v. Scales,* 27 Wis., 638; *Booth v. Ryan,* 31 id., 45; *Reed v. Randall,* 29 N. Y., 362, 363; *Gaylord Man. Co. v. Allen,* 53 id., 519; *Cassidy v. Le-*

*fevre*, 57 Barb., 313. 3. That the evidence was not such as to warrant the finding of the jury.

*John Frazer* and *Bundy & Manwaring*, for respondent: 1. After an executed sale of the machine to him with express warranty, the subsequent giving of notes by defendant for the price was not necessarily a waiver of the terms of the warranty. The property vested in him from the delivery; and he could retain it and sue on his warranty without notice. *Getty v. Rountree*, 2 Pin., 379. In fact this was his only remedy. Sedgw. on Dam., 287. The giving of the notes could therefore make no difference in the rights of the parties (Chitty on Con., 407, note 1); though it might be some evidence that the terms of the warranty were complied with, and sufficient to call for explanation on defendant's part. In this case the reason why the notes were given are fully explained. 2. Ordinary care and diligence are always presumed, until the contrary appears. Men are presumed to act for their own interest, and to use ordinary care and diligence in prosecuting their business. Shearm. & Redf. on Neg., §§ 43, 44, and cases there cited. *M. & C. R. R. Co. v. Hunter*, 11 Wis., 160.

COLE, J. One of the errors relied on for a reversal of the order was the refusal of the court to give the two instructions asked on the part of the plaintiffs. These requests seem to have been asked as one charge; or, at all events, there is only one exception to the refusal of the court to give them. This exception will not enable this court to review the correctness of any single instruction. The only question arising on the exception is, whether both requests, when considered as an entire charge or instruction, were correct as a proposition of law. *Strachan v. Muxlow,* 31 Wis., 207, and cases cited. The second instruction asked, as it seems to us, is clearly incorrect. The giving of the notes, under the circumstances disclosed in the evidence, without claiming a deduction from the contract price of the machine for the alleged

breach of warranty, did not *per se* amount to a waiver of the warranty. The execution of the notes some time after the purchase of the machine, and after the defendant had had an opportunity to try it, might be a circumstance tending to show that the defendant was satisfied with the machine; though even for that purpose it would be entitled to but little weight or importance.

At the request of the defendant, the court charged that if the plaintiffs rely upon any carelessness or unskillfulness on his part in managing the machine, they must prove it, the presumption being that the machine was operated with ordinary care and skill; and, unless the contrary was shown, the jury must assume such to be the fact. This charge was excepted to by the plaintiffs. Also in the general charge the court instructed the jury, that, as to the mode of operating the machine, the law required that ordinary care and skill should be used in testing its merits in order to ascertain if it was such a machine as promised; and that, in the absence of testimony to the contrary, the presumption would be that ordinary care and skill were used in the operation of the machine. This charge was likewise excepted to by the plaintiffs.

What would be the true rule in regard to the burden of proof where no evidence whatever was given as to the manner of operating the machine, is a question we need not determine. It will be seen that the court held that in such a case the presumption would be that the machine was operated with ordinary care and skill, and that it was incumbent upon the plaintiffs to show that it was not so used. The warranty that the machine would do good work was doubtless upon the condition that reasonable skill and care would be used in operating it; and this must be assumed to be the understanding of the parties to the contract. The defendant on the trial attempted to show, as a part of his case, that the machine did not answer the warranty, and did not do good work, although

reasonable skill and care were exercised in operating it. This evidence was controverted on the part of the plaintiffs, who attempted to prove that the defendant did not use ordinary skill in operating the machine. In this state of the evidence, there was no ground for a presumption either way, but the question should have been submitted to the jury to determine how the fact was. It was plainly a question of conflicting evidence. What presumption would arise in the absence of all evidence upon the question, was a matter not involved in the cause; and stating what the presumption would be in such case was well calculated to mislead the jury. The question should have been submitted upon the conflicting evidence given, for the jury to determine whether the machine was used with ordinary care and skill or not. There was certainly evidence to carry the case to the jury upon that point.

We will add the remark that we express no opinion as to which party was bound to show that the machine was skillfully or unskillfully operated. That question is not here, and we therefore do not feel called upon to consider it. But the instructions given on that point were well calculated to prejudice the plaintiffs, and for that reason a new trial is ordered.

The counsel for the defendant calls our attention to some discrepancies between the printed case and the original bill of exceptions. And in the printed case there are references to the original bill of exceptions. I have read the manuscript bill, and find some defects in the printed case. The rule requires the printed case to contain everything material and necessary for a proper understanding of the case and the points to be decided. It is expected that the bar will comply with the rule; otherwise it will be enforced against them.

*By the Court.* — The order of the circuit court denying the motion for a new trial is reversed, and the cause is remanded for further proceedings in accordance with this opinion.