HOVEY et al. v. SANDERS et al.   (No. 722.)†

(Court of Civil Appeals of Texas.   Amarillo. Feb. 13, 1915.   Rehearing Denied March 27, 1915.)

1. APPEAL AND ERROR ⬅➡719—RESERVATION OF GROUNDS OF REVIEW—EXCEPTIONS TO PEREMPTORY INSTRUCTION—NECESSITY.

The giving or refusing of a peremptory instruction is fundamental error, apparent on the face of the record, which must be considered on appeal, although not assigned as error; Acts 33d Leg. c. 59, providing that the ruling of the court in giving or refusing a requested instruction shall be regarded as approved, unless excepted to as provided for, having no application.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2968–2982, 3490; Dec. Dig. ⬅➡719.]

2. EXCEPTIONS, BILL OF ⬅➡20—GROUNDS FOR REVIEW—SUFFICIENCY.

A notation by the court in bill of exceptions to instructions that submission of the issues was "requested in accordance with the statutes, and that the defendants duly excepted to the action of the court in refusing such issues," was sufficient to show that the requests were made and refused and exceptions reserved before argument and before the charge was read to the jury, as required by statute.

[Ed. Note.—For other cases, see Exceptions, Bill of, Cent. Dig. §§ 21–28; Dec. Dig. ⬅➡20.]

3. APPEAL AND ERROR ⬅➡273—RESERVATION OF GROUNDS FOR REVIEW—REQUEST FOR INSTRUCTIONS—SUFFICIENCY OF EXCEPTION.

One general exception to the refusal of the court to give several requested instructions is not entitled to consideration on appeal, if any one of the propositions is unsound, or where some of the propositions were mere repetitions of what the court has already submitted to the jury, and so were properly refusable.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1590, 1606, 1620–1623, 1625–1630, 1764; Dec. Dig. ⬅➡273.]

4. APPEAL AND ERROR ⬅➡730—RESERVATION OF GROUNDS OF REVIEW—REFUSAL TO INSTRUCT—BILL OF EXCEPTION—SUFFICIENCY.

Where the bill of exception, to the refusal to give an instruction, merely stated the fact of the refusal and failed to state that the charge was requested or presented before the general charge was read to the jury and before the argument, as required by statute, the assignment of error based thereon could not be considered on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3013–3016; Dec. Dig. ⬅➡730.]

5. EXCEPTIONS, BILL OF ⬅➡56—CERTIFICATE OF JUDGE—TIME OF OBJECTION—PRESUMPTION.

It must affirmatively appear in exceptions to the court's charge that the statute, requiring objections to the general charge to be presented before its reading to the jury and before the

argument, was complied with, so that a memorandum by the court to exceptions to its charge that "these exceptions were presented before the jury retired, in the hearing of the attorneys, and were by me overruled, to which defendants excepted," was not sufficient; the presumption being that the argument was not made until after the charge was read to the jury, and that the jury did not retire until after the conclusion of the argument.

[Ed. Note.—For other cases, see Exceptions, Bill of, Cent. Dig. §§ 94–96; Dec. Dig. ⬅➡56.]

6. RAILROADS ⬅➡350—ACCIDENTS AT CROSSING — CONTRIBUTORY NEGLIGENCE — SUFFICIENCY OF EVIDENCE.

Evidence held insufficient to show, as matter of law, that plaintiff's decedent was guilty of contributory negligence in crossing a railroad track.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. ⬅➡350.]

7. DEATH ⬅➡ 58 — ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE — PRESUMPTION.

In an action for death of one killed at a railroad crossing, in the absence of evidence as to whether decedent looked or listened for the train, the presumption was that he did both in the exercise of ordinary care.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 75–78; Dec. Dig. ⬅➡58.]

8. RAILROADS ⬅➡350 — ACCIDENT AT CROSSING—NEGLIGENCE.

An attempt to cross a railroad track before a train is not negligence per se.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. ⬅➡350.]

9. RAILROADS ⬅➡350 — ACCIDENT AT CROSSING—NEGLIGENCE.

Failure to stop, look, and listen before using a railroad crossing is not negligence per se.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. ⬅➡350.]

10. RAILROADS ⬅➡346—ACCIDENT AT CROSSING—PROOF OF FACTS SHOWING CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.

When undisputed evidence establishes contributory negligence, prima facie, on the part of one struck by a train at a railroad crossing, the burden of proof is upon him to show facts from which the jury may find him free from negligence as to the whole case, otherwise the court may instruct for the defendant; there being no issue of fact for the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1117–1123; Dec. Dig. ⬅➡346.]

11. RAILROADS ⬅➡346—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.

In an action for injuries received by being struck by a railroad train at a crossing, the burden of proof is upon defendant to show contributory ·negligence, except (1) where facts stated in the petition legally establish prima facie negligence on the part of plaintiff, (2) where the undisputed evidence legally establishes prima facie negligence on the part of plaintiff, in which cases the burden is upon the plaintiff to show his freedom from negligence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1117–1123; Dec. Dig. ⬅➡346.]

12. RAILROADS ⬅➡352—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE—FAILURE TO LOOK AND LISTEN.

Where the jury found that, if the plaintiff had stopped, looked, and listened, he would not have been struck by a train at a crossing, and also that in not listening, etc., the plaintiff acted as a reasonable man and did not fail to ex-· ercise due care, the judge properly refused to

render judgment for the defense on such finding, since failure to stop, look, and listen before using a crossing is not negligence per se.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1216; Dec. Dig. ☞352.]

13. PLEADING ☞377—ADMISSION BY FAILURE TO DENY—RECEIVERS OF RAILROADS.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1902, providing that the defendant must plead to each fact alleged in plaintiff's petition, either admitting or denying knowledge or belief, and further providing that any fact not denied, etc., shall be taken as confessed, failure of defendants to deny the allegation of the petition that they were receivers and operating the road when decedent was killed excused the plaintiffs from offering proof on the point.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1228–1231; Dec. Dig. ☞377.]

14. TRIAL ☞28—VIEW OF PREMISES BY JURY—DISCRETION OF COURT.

In an action for death of plaintiff's decedent by being struck by a train at a railroad crossing, whether the jury should be permitted to view the premises was a question for determination of the court, resting within its sound discretion; and where numerous maps and plans of the spot in question were introduced in evidence, adequately informing the jury as to the physical conditions, the action of the court, in refusing to allow the jury to view the premises, was not error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 77–79; Dec. Dig. ☞28.]

15. EVIDENCE ☞359—ACCIDENT AT CROSSING—PHOTOGRAPH.

In an action for death of plaintiff's decedent at a railroad crossing, a photograph of the premises was admissible in evidence, although it showed a flat car in position where proof showed a box car, the character of the cars being material, since such box car was alleged to have obstructed decedent's view, the matter of locating cars at the time the photograph was taken being manifestly not within plaintiff's power.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1509–1512; Dec. Dig. ☞359.]

16. EVIDENCE ☞514 — DISTANCE REQUIRED TO STOP TRAIN—ADMISSIBILITY.

In an action for death of plaintiff's decedent at a railroad crossing, evidence is admissible as to the reasonable distance in which the train might have stopped upon the occasion of the accident under the conditions and speed shown.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2319–2323; Dec. Dig. ☞514.]

17. EVIDENCE ☞546 — OPINION — EXPERT—QUALIFICATION—QUESTION FOR COURT.

Whether a witness is qualified as an expert is a question for the trial court and within its sound discretion.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2363; Dec. Dig. ☞546.]

18. APPEAL AND ERROR ☞232—RESERVATION OF GROUNDS OF REVIEW — DIFFERENT GROUNDS OF OBJECTIONS.

Assignments of error, which do not present the same objections to the appellate court as were presented to the court's charge below, cannot be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1351, 1368, 1426, 1430, 1431; Dec. Dig. ☞232.]

19. APPEAL AND ERROR ☞1001—REVIEW OF VERDICT.

A verdict, based on conflicting evidence, cannot be reviewed on appeal, where there was some evidence to sustain the jury's finding on every essential point.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3922, 3928–3934; Dec. Dig. ☞1001.]

20. DEATH ☞99—VERDICT—AMOUNT.

In an action for death of plaintiff's decedent, a verdict of $8,000, apportioning $4,000 to the widow, and $1,000 to each of the four children, was not excessive.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 125–130; Dec. Dig. ☞99.]

Error from District Court, Foard County; J. A. Nabers, Judge.

Action by Mrs. V. L. Sanders and others against S. B. Hovey and another, as receivers of the Kansas City, Mexico & Orient Railway Company of Texas. Judgment for plaintiffs, and defendants bring error. Affirmed.

H. S. Garrett, of San Angelo, L. W. Allred, of Chillicothe, and D. J. Brookreson, of Benjamin, for plaintiffs in error. Robt. Cole, of Crowell, V. L. Shurtleff, of Hillsboro, and C. L. Black, of Austin, for defendants in error.

HALL, J. Defendant in error, Mrs. V. L. Sanders, for herself and minor children, Allie, Allen, Hardy, and Annie Sanders, brought suit in the district court of Foard county against S. B. Hovey and M. L. Mertz, as receivers of the Kansas City, Mexico & Orient Railway Company of Texas, as defendants, for damages for the death of her husband, L. O. Sanders, alleged to have been negligently killed on a crossing at Crowell, Tex., on March 22, 1913. There was judgment against defendants for $8,000, apportioning $4,000 to Mrs. Sanders, $1,000 each to each of the children. By the judgment, a one-third interest therein was decreed to V. L. Shurtleff and Robert Cole.

[1] The first assignment complains of the refusal of the court to direct a verdict in favor of the defendants. Defendants in error object to the consideration of this assignment because plaintiffs in error did not reserve any proper or sufficient exception to the general charge of the court submitting the issue of contributory negligence as one of fact to the jury. A peremptory instruction was asked, upon the ground that the undisputed evidence established that the deceased was guilty of contributory negligence, as a matter of law. Appellees insist that, under the express terms of article 2061 (Acts 1913, c. 59), this action of the court should be regarded as approved by the plaintiffs in error. This court has uniformly held that the giving or refusing of a peremptory instruction is fundamental error, which it is the duty of this court to consider, even without an assignment of error, and that the act of the Thirty-Third Legislature (chapter 59), referred to above, has no application. Owens et al. v. Corsicana Petroleum Co., 169 S. W. 192; Henderson & Grant v. Gilbert, 171 S.

W. 304; Neville v. Miller, 171 S. W. 1109. It has been uniformly held that instructions by the trial court- upon issues not raised by the pleadings and evidence constitutes fundamental error, which invokes the consideration of the appellate tribunal, without even an assignment of error; and the Supreme Court, in Oar v. Davis, 105 Tex. 479, 151 S. W. 794, held that a fundamental error, being one "apparent upon the face of the record," is such manifest error as, when removed destroys the foundation of the judgment. If there is not sufficient evidence in behalf of plaintiff to sustain the verdict in his favor, and the court should nevertheless submit the issues to the jury, or if the evidence introduced by the defendant proves no defense whatever, but still it should be submitted to the jury, and judgment is rendered in his favor but against the evidence, we think it is such error as, "when removed, destroys the foundation of the judgment," and upon this theory we feel justified in holding that the action of the court in giving or refusing peremptory instruction is error "apparent upon the face of the record." We therefore overrule the defendant in error's exception to the first assignment of error.

[2, 3] Plaintiffs in error requested the court to submit to the jury 17 questions, upon which the court indorsed:

"Special issue No. A, requested by H. S. Garrett, D. J. Brookreson, L. W. Allred, and H. E. Jackson, attorneys for defendants, in accordance with the statutes in such cases made and provided, and refused, except as to questions numbered 6, 12, 13, 14, 16, and 17, which are given. J. A. Nabers, trial judge."

Plaintiffs in error reserved their bill of exceptions to the refusal of the court to submit all the issues as follows:

"Be it remembered that defendants' requested special issues 1 to 17, indorsed 'Special issue No. A,' requested by defendants, in accordance with statutes; that the court indicated and stated that he would give the ones marked O. K. by the court; that he would refuse all others; that defendants duly excepted to the action of the court in refusing said issues."

It is contended by appellees that a reservation of one general exception to the refusal of 11 questions and the notation by the court is insufficient under the present statute: First, because the statement of the court that the issues were requested "in accordance with the statutes in such cases made and provided" is not sufficient to show that the exceptions were reserved before the beginning of the argument and before the charge was read to the jury. We held in Sanger v. First National Bank, 170 S. W. 1087, that it was the duty of the court to present special charges submitted by one party to opposing counsel; and, in the absence of a contrary showing in the record, we would presume that this duty had been performed by the court. We also think that the statement by the court that the issues "were requested in accordance with the statute, and that the defendants duly excepted to the action of the court in refusing said issues," is sufficient to show that the request was made and exceptions reserved before argument and before the charge was read to the jury. In this connection, it is further contended that "a general wholesale exception" to the court's refusal to give several distinct charges or instructions is not entitled to consideration on appeal if any one of the charges requested is erroneous and not entitled to be given. This question has never been decided in this state, so far as we are able to learn. Of the 11 different issues refused by the court and included in the exception, they complain in their brief specifically of the failure to give only three of them; and it is apparent that some of the issues included in the 11 refused by the court are mere repetitions of what the court had already submitted to the jury, and of course were therefore properly refused. It seems that our present practice with reference to excepting to the court's charge and to the refusal of special charges is practically identical with that followed in the federal court and in several of the state courts. In Railway v. Callaghan, 161 U. S. 91, 16 Sup. Ct. 493, 40 L. Ed. 628, the court said:

"Again, it is firmly established that, where propositions submitted to a jury are excepted to en masse, the exception will be overruled, provided that any of the propositions be correct; and, where a general exception is taken to the refusal of a series of instructions, it will not be considered, if any one of the propositions is unsound."

To the same effect, see Thiede v. Utah, 159 U. S. 510, 16 Sup. Ct. 62, 40 L. Ed. 237; Bogk v. Gassert, 149 U. S. 17, 13 Sup. Ct. 738, 37 L. Ed. 631; Insurance Co. v. Smith, 124 U. S. 405, 8 Sup. Ct. 534, 31 L. Ed. 497; Chateaugay Iron Co. v. Blake, 144 U. S. 476, 12 Sup. Ct. 731, 36 L. Ed. 510; Razor v. Razor, 142 Ill. 375, 31 N. E. 678; Baker v. McGinniss, 22 Ind. 257; Fleming v. Latham, 48 Kan. 773, 30 Pac. 166; Omaha v. McGavock, 47 Neb. 319, 66 N. W. 415; Tousey v. Roberts, 114 N. Y. 312, 21 N. E. 399, 11 Am. St. Rep. 655; Jones v. Swearingen, 42 S. C. 58, 19 S. E. 947; Goodwin v. Perkins, 39 Vt. 598; Harrison v. Crocker, 39 Wis. 68. We sustain this exception, which disposes of the seventh, eighth, and ninth assignments of error.

[4] Plaintiffs in error requested the court to submit special charge No. C, upon which the court made this memorandum:

"Special charge No. C, requested by the defendants, and, after having been presented to counsel for the plaintiffs, is not given. Defendants except. J. A. Nabers, Judge."

It is not shown that this special charge was requested or presented to the trial judge before the general charge was read to the jury, and before the argument, as required by the present statute, and defendant in error's exceptions are sustained. Insurance Ass'n v. Rhoderick, 164 S. W. 1067; Johnson v. Hoover, 165 S. W. 900; Ford Motor Car Co. v. Freeman, 168 S. W. 80. This excep-

tion disposes of the tenth assignment of error.

Upon the bottom of special charges Nos. 1, 2, 5, and 6, the court made the following memorandum:

"Special charge No. ——, requested by defendants, and after having been presented to counsel for the plaintiff, is not given. Defendant excepts."

For the reasons stated, and upon the authorities above quoted, we hold that this is not sufficient to require consideration of the eleventh, twelfth, thirteenth, and fourteenth assignments of error.

[5] Plaintiffs in error filed objections and exceptions, nine in number, to the court's charge. Upon the bottom of these exceptions and objections, the court made this memorandum:

"These exceptions were presented to the court in open session before the jury retired, in the hearing of the attorneys for the plaintiff, and were by me overruled, to which defendants duly then and there excepted in open court."

This notation does not show that the objections and exceptions to the court's general charge were presented before the court's charge was read to the jury and before the argument of counsel. As contended by appellees, we must presume that the argument was not made until after the charge was read to the jury, and that the jury did not retire until the charge was read to them, and the argument was concluded. So far as this bill shows, the objections and exceptions may have been presented to the court during the interval between the argument and the retirement of the jury. We held in Mutual Life Insurance Association v. Rhoderick, supra, that it must affirmatively appear that the statute in this particular has been complied with. We sustain this exception, which disposes of the fifteenth, sixteenth, seventeenth, nineteenth, twenty-first, twenty-third, twenty-fifth, and twenty-sixth assignments of error.

Defendants in error alleged in substance that L. O. Sanders, at the time of his death, was engaged in the business of hauling freight in the town of Crowell; that on the day he was killed he had occasion to drive a wagon and team over the crossing of what was known as the "house" track of the railroad company, for the purpose of going to the place maintained by defendants for freight; that after he had loaded his wagon with freight and was returning from the depot to the town of Crowell, and while attempting to cross the "house" track, at a crossing maintained and provided by the company, his wagon was struck and overturned by the train operated by the defendants on the house track, resulting in his death. The negligence alleged is in the following particulars:

(1) In the act of the servants of the defendants in operating and backing the freight train over said public crossing at a great and unusual rate of speed; (2) the backing of the train at a great and unusual rate of speed without maintaining a lookout on the back of the train; (3) an insufficient number of operatives of the train, it being alleged that, at the time of the accident, the train was in charge of only two servants, viz., a fireman and brakeman, also that the crew was improperly distributed on the train so that they could not keep a proper lookout; (4) failure of the defendants or their servants to advise the deceased Sanders, by signal or any character of warning, of the approach of the train.

There was a proper special denial of the special allegations of negligence, by plaintiffs in error, who further alleged that the deceased, Sanders, was guilty of contributory negligence at the time of the accident in that he either knew of the oncoming cars and yet drove upon the track, or, if he did not know of their approach, he failed to exercise proper care to discover them. These affirmative allegations were denied by defendants in error.

The cause was submitted to the jury upon special issues, resulting in a verdict against defendant in the sum of $8,000. The substance of the jury's findings is that deceased was killed at a public crossing; that the train was backed over the crossing without ringing the bell which contributed to or caused the accident; that the crew in charge of the train at the time of the accident was insufficient to operate it; that the train was run at a fast, unusual, and dangerous rate of speed; that the crew was not so distributed as to keep a lookout for persons about to use the crossing; and that they gave no signal of warning whatever of the train's approach to the crossing—and further found that the defendants were guilty of negligence in each and all of said particulars, and that the negligence of the defendants in such particulars proximately caused the accident, which would not have happened but for such negligence.

On the issue of contributory negligence, the jury found that Sanders was not aware of the approach of the train in time to have saved himself by the exercise of ordinary care; that Sanders could not, by the exercise of ordinary care, circumstances considered, have discovered the approach of the train in time to have avoided the accident; that Sanders did not fail to exercise ordinary care in going on the track at the time he did, either by failing to look and listen for the approach of the train or by driving on the track after he saw the same, or should have seen the same by the exercise of ordinary care; that the deceased was not warned by the witness Charles Andrews of the approaching cars before he (Sanders) went upon the track; that a reasonably prudent and cautious person, possessed of an ordinary eyesight and hearing, and acting in the exercise of due care for his own safety, under the circumstances which surrounded L. O. Sanders up to the time he started to cross the track, would not have stopped and looked and listened before he started to cross the track; that Sanders did not stop and look and listen before he went upon the track; that if a reasonably

prudent and cautious person, possessed of ordinary eyesight, etc., situated as Sanders was before he crossed the track, had stopped, looked, and listened, such person would have discovered the approaching cars.

In addition to the special issues, the court gave in charge to the jury plaintiffs in error's special charges No. C and No. 4, upon the issue of contributory negligence, favorable to plaintiffs in error.

[6-11] Appellants first contend that the court erred in refusing to grant defendants' motion to instruct a verdict in their favor, and by their proposition they insist that where one undertakes to cross a railroad track on premises with which he is familiar, and under conditions which charge him with knowing that a train will probably pass along the track, it is his duty to exercise ordinary care and prudence for his own safety, and, if he fails to make any other effort to discover the train, his failure, without reasonable excuse to stop, look, and listen, or to look and listen under such circumstances, will charge him with contributory negligence, as a matter of law, barring his recovery; and they further insist contributory negligence on the part of the deceased was clearly established. In this we do not concur. The evidence of Andrews, the only eyewitness to the transaction, gives us no information upon the issue of looking and listening, until the team driven by Sanders was already on the track. His testimony on the subject is:

"He was not on the track when I hollered at him. His team was just starting up on the track when I hollered at him."

On redirect examination he said:

"At the time I hollered at him, Mr. Sanders' team were just about with their front feet in the middle of the rails when I saw it" (the train).

Further:

"At the time I first saw the train the car that struck him was about 150 feet from Mr. Sanders, I guess, and just as soon as I saw the train I hollered at him, and I suppose the car at that time was about 125 or 130 feet from him. Before he could get off the track, the train had struck his wagon. I don't know at what rate of speed that train was traveling."

It appears that Sanders had loaded his dray with freight from a car on the east side of the depot, driving from that point about 150 or 175 feet before he reached the crossing where he was killed northwest of the depot. The train which struck his wagon had previously passed the depot going south and was backing in· on the house track, which ran almost parallel with the main track, but west of the depot. There is a coalhouse 39 feet north of the depot, which is 8 feet in length, 6 feet in breadth, and 9 feet 9 inches high. The distance from the depot to the crossing is 99 feet. The deceased was shown to be about 5 feet —— inches in height, and at the time of the accident was standing on his dray, the platform of which was shown to be about 5 feet above the ground. The house track is about 6 feet west of the depot. With the exception of the coalhouse, there were no other buildings or objects to obstruct the view of Sanders to the south where he could see the house track beyond the northwest corner of the depot.

The above-quoted testimony from the witness Andrews, as stated, throws no light upon the issue of looking and listening, except at a time when the danger was imminent and Sanders was forced to act in an emergency. No witness has testified whether prior to that time he either looked or listened for the train. The presumption in such cases is that, in the exercise of ordinary care for his safety, he both looked and listened before approaching the crossing. Chicago, Rock Island & Gulf Ry. Co. v. Clay, 55 Tex. Civ. App. 526, 119 S. W. 733; Texarkana, etc., Ry. Co. v. Frugia, 43 Tex. Civ. App. 48, 95 S. W. 563; San Antonio Traction Co. v. Levyson. 52 Tex. Civ. App. 122, 113 S. W. 572; 33 Cyc. 1072; 11 L. R. A. (N. S.) 844, casenote; 16 L. R. A. 261, note. An attempt to cross a railroad track in front of an approaching train is not negligence per se. H. & T. C. Ry. Co. v. Laskowski, 47 S. W. 59; I. & G. N. Ry. Co. v. Starling, 16 Tex. Civ. App. 365, 41 S. W. 181; Gulf, etc., Ry. v. Rhoane, 33 Tex. Civ. App. 299, 76 S. W. 771. It is also held that a failure to stop, look, and listen is not negligence per se. M., K. & T. Ry. v. Balliet, 48 Tex. Civ. App. 641, 107 S. W. 906; Texarkana, etc., Ry. Co. v. Frugia, supra. The rule is established in this state with reference to negligence per se, as follows:

"When the undisputed evidence adduced on the trial establishes prima facie, as a matter of law, contributory negligence on the part of plaintiff, then the burden of proof is upon him to show facts from which the jury upon the whole case may find him free from negligence·; otherwise the court may instruct a verdict for the defendant, there being no issue of fact for the jury." Huber v. T. & P. Ry., 113 S. W. 984; Dalwigh v. I. & G. N. Ry. Co., 42 S. W. 1009.

In the last-named case the rule is stated in this language:

"If no signals were blown or the track was obstructed, in either event it could not be declared, as a legal conclusion, that the collision was due to plaintiff's negligence. The rule in this state, unmistakably laid down by the Supreme Court, that a failure to stop, look, and listen is not negligence per se, would certainly, in connection with the testimony adverted to, present a case that does not render the plaintiff so plainly guilty of negligence as to change the burden of proof in reference to contributory negligence."

The evidence in this case shows that the coalhouse, to some extent, obstructed the view; that the depot, besides, in a measure, obstructing the view of the approaching train, prevented the witness Andrews from hearing the train's approach until about the time he first saw it. The evidence is uncontroverted that the whistle was not blown nor the bell rung. Such being the state of the record, the court could not, without com-

mitting reversible error, instruct a verdict. Denman, Justice, in G., C. & S. F. Ry. Co. v. Shieder, 88 Tex. 152, 30 S. W. 902, 28 L. R. A. 538, reviewed the authorities upon the question of the burden of proof on the issue of contributory negligence at length, holding that the burden was, as a general rule, upon the defendant, to show contributory negligence, and stated as well-defined exceptions to the rule all cases where (1) the legal effect of the facts stated in the petition is such as to establish prima facie negligence on the part of the plaintiff, as a matter of law; and (2) when the undisputed evidence adduced on the trial established prima facie, as a matter of law, contributory negligence on the part of plaintiff, then the burden of proof is upon him to show facts from which the jury, upon the whole case, may find him free from negligence. It is not contended that the allegations in the petition bring this case within the first exception. Taking the facts recited above, coupled with the presumption which must be indulged in favor of Sanders that he did look and listen, we approve the court's action in refusing to instruct the verdict, since they do not establish prima facie Sanders' negligence per se.

[12] Plaintiffs in error contend that the court erred in refusing to render judgment in their behalf on the special issues, as answered by the jury, because it was specifically found that, if Sanders had stopped, looked, and listened, he would have discovered the approaching cars; and, the evidence failing to show any other effort on his part to discover the cars before he drove upon the track, it follows, as a matter of law, the deceased is charged with contributory negligence. We have, we think, sufficiently disposed of this contention in what has been said in discussing the first assignment of error. We will add, however, that the jury also found that a reasonably prudent and cautious person, acting in the exercise of ordinary care for his own safety, and under the same or similar circumstances as those surrounding Sanders up to the time he crossed the track, would not have stopped and looked and listened; that Sanders did not fail to exercise ordinary care in going on the track, either by failing to look and listen or by driving on the track after he saw or should have seen the train. These findings required the court to enter judgment for the plaintiff.

[13] The third assignment is based upon the fact that the evidence wholly—

"fails to show that S. B. Hovey and M. L. Mertz were or are the receivers of the Kansas City Mexico & Orient Railway Company of Texas, or that they had ever been appointed or qualified as such, or that they were acting as such, or by what court, if any, they had been appointed, or any fact which would authorize the court and jury to conclude that they occupied such capacity at the time of the death of Sanders, or that they now occupy such capacity, or that the death of Sanders was caused by their acts, or that they are liable therefor, or which would authorize the court to render a judgment against them as such defendants."

Defendants in error alleged in their first amended original petition (paragraph 3):

"That the defendants, S. B. Hovey and M. L. Mertz, are the receivers of, and as such receivers are operating the line of railway through Foard county, Tex., known as the Kansas City, Mexico & Orient Railway Co. of Texas," etc.

In paragraph 4 it is alleged that on or about the date last mentioned the said defendants, as such receivers, maintained in the town of Crowell a depot and were operating trains through said town; that at or near where the said depot was maintained was a public road crossing which was maintained by said defendants, for the convenience of the public crossing said line of railroad, operated by them, in going to the depot maintained by the defendants, etc.

Plaintiffs in error denied only part of these allegations, as follows:

"Defendants deny that they are operating the line of railway of the Kansas City, Mexico & Orient Railway Company of Texas, as alleged by plaintiffs in the third paragraph of their said petition. Defendants deny that there was a public railroad crossing maintained by them for the convenience of the public in crossing said line of railroad in going to the depot, or that there is a coalhouse so situated, etc., as is attempted to be alleged by plaintiffs in the fourth paragraph of their petition."

Article 1902, Vernon's Sayles' Civil Statutes, provides that the defendant in his answer shall plead to each fact alleged in the plaintiff's petition and either admit or deny the same, or deny that he has any knowledge or belief; and it is further provided that any fact not denied by the defendant, or which he does not deny that he has any knowledge or information thereof sufficient to form a belief, shall be taken as confessed. Defendants in error did not waive their rights under this article of the statute, as shown by the record. By force of the statute, plaintiffs in error confessed, by their failure to specifically deny, that they were receivers of the railway company at the time of the accident, and at the date of the trial, and that they were operating the road as such receivers upon both of said dates. In the cases cited by plaintiffs in error the question arose under articles 1827 and 1829, and have no bearing whatever upon the issue here. The case of Kirby Lumber Co. v. Cunningham, 154 S. W. 292, was, as shown by the opinion, pleaded and tried before our statute, requiring sworn pleadings, was enacted. This assignment is overruled.

[14] During the trial, after most of the oral testimony was in, and after plaintiffs had introduced in evidence photographs taken by the witness Cross, of the depot and surroundings, plaintiffs in error moved the court to permit the jury to view the place of the accident. The court overruled the motion, and this is made the basis of the fourth assignment of error. We have no statute in this state authorizing any such proceeding.

Under the common-law rule, the practice is a matter within the discretion of the trial judge, and appellate courts have, in nearly all cases, declined to review the order of the trial court denying a view. We doubt if this rule has ever been established in this state. A review of the cases where the question has been raised shows that the trial courts have discouraged it, and the higher courts have not looked upon the practice with any favor. Smith v. State, 42 Tex. 444; Fate v. State (Tex. Cr.) 164 S. W. 1018; Gamer Co. v. Gammage, 147 S. W. 721; G., C. & S. F. Ry. Co. v. Hamilton, 17 Tex. Civ. App. 76, 42 S. W. 358. However, if we should admit that this practice obtains in this state, still no injury is shown in this case by the refusal of the court to permit the view by the jury. We find in the record a blueprint showing the situation of the depot, house track, and a map of all the surroundings, also a map made by plaintiff in error's principal witness and used by him to demonstrate his testimony. In addition to this, plaintiffs in error introduced ten large photographs, and defendants in error introduced two large photographs, showing the place of the accident, the depot and coalhouse, from as many different angles and view points, some of them with cars on the house track, some without, some with flat cars, some with extra large automobile cars, standing behind the coalhouse, and the testimony of several witnesses fully and particularly explaining the various photographs. It is not shown that the jury could have learned any more by visiting the place of the accident than is shown by the photographs, documentary evidence, and testimony of the witnesses placed upon the stand. We therefore overrule this assignment.

[15] Plaintiffs in error objected to the introduction of the two photographs, marked Exhibits A and B, and produced by defendants in error, for the reason that the photographs show that the car on the track nearest to the place at which the accident is alleged to have occurred is not the kind or character of car which is alleged and shown by the proof to have struck the wagon. They contend that the photographs show a flat car, and the proof shows a box car, and in that respect are materially different on an important issue in the case, being the issue as to whether the deceased saw or could have seen the box car from his wagon. Reference to the photographs shows that they were taken when the flat car was northwest of the coalhouse and when a box car was standing immediately southwest of the coalhouse, on the house track. The presence of the flat car, of course, is a matter of no importance, as the box car is in a proper position to illustrate the contention of both parties. The matter of locating cars at the time the photograph was made is manifestly a question which defendants in error could not control, and the presence of the flat car, if noticed by the jury, could not have misled them, when considered in the light of the uncontradicted testimony that Sanders was killed by a box car and not a flat car.

[16, 17] By their sixth assignment plaintiffs in error insist that the court erred in permitting the witness Ed. Mercer to testify as to what would be a reasonable distance in which the train might have stopped upon the occasion of the accident, under the conditions shown and at the rate of speed at which it was proved the cars were traveling at the time of the accident. This question has been settled adversely to the contention of the plaintiffs in error and such testimony held admissible. G., H. & S. A. Ry. v. Murray, 99 S. W. 144; G., H. & S. A. Ry. v. Croskell, 25 S. W. 486; I. & G. N. Ry. v. Parke, 169 S. W. 397. Under this assignment, plaintiffs in error also attack the qualification of the witness to testify as an expert. This is generally a question for the trial court. M., K. & T. Ry. v. Hedric, 154 S. W. 633. We think the testimony was sufficient to show the qualification of Mercer.

[18] Under the sixteenth and eighteenth assignments, plaintiffs in error do not present the same objections here as were urged to the court's charge in the court below, and these assignments will not be considered.

[19, 20] By the remaining assignments, it is insisted that the evidence is insufficient to support the findings of the jury. Upon most of these issues the evidence was sharply conflicting, with some evidence to sustain the jury upon every point. The findings, therefore, are binding upon this court. The verdict was not, in our opinion, excessive.

Finding no reversible error in the record, the judgment is affirmed.