TEXAS MIDLAND R. R. v. BROWN.
(No. 8024.)

(Court of Civil Appeals of Texas. Dallas. Nov. 30, 1918. Rehearing Denied Jan. 4, 1919.)

1. RAILROADS ☜278(2) — PERSONAL INJURIES—DUTY OF INSPECTION.

An employé of a third person engaged in unloading coal cars, injured while attempting to block a car after having released a defective brake, was not required to inspect the car before moving it, defendant knowing of the custom of allowing coal cars to move a short distance by gravity to facilitate unloading.

2. TRIAL ☜191(8) — INSTRUCTIONS — ASSUMPTION AS TO FACTS.

Where an employé of a third person was injured while blocking a coal car moving by gravity after plaintiff had released a defective brake, it was not error to refuse an instruction for defendant, erroneously assuming that plaintiff knew, or ought to have known, of the defective brake, and that he moved the car without inspection.

3. APPEAL AND ERROR ☜263(3)—RESERVATION OF OBJECTIONS — REFUSAL TO INSTRUCT.

Refusal to give a correct charge in lieu of an erroneous one will not be considered, in the absence of a proper exception and assignment.

4. NEGLIGENCE ☜119(7) — CONTRIBUTORY NEGLIGENCE—PLEADING AND PROOF.

In order for a defendant to recover on contributory negligence, he must prove negligence in the way he specially pleaded it, and the court is restricted to grounds alleged in the answer.

5. TRIAL ☜191(8) — INSTRUCTIONS — ASSUMING FACTS.

Where an employé of a third person was injured while attempting to block a moving car upon which the brake was defective, an instruction, assuming contributory negligence on plaintiff's part in going in front of the car, was properly refused; evidence showing that plaintiff thought it necessary to act as he did to prevent accident to others on the track.

6. TRIAL ☜314(1) — CONDUCT OF TRIAL JUDGE—COERCION OF JURY.

In a personal injury action against railroad company wherein the jury failed to agree, a statement by the judge after the jury had retired as to the desirability of bringing in a verdict *held* not coercive.

7. APPEAL AND ERROR ☜1170(6)—REVERSAL — CONDUCT OF TRIAL JUDGE — RULES OF COURT.

Court of Civil Appeals rule No. 62a, prohibiting reversals for errors of law by the trial

court not calculated to cause rendition of an improper judgment, applies where the judge, after the jury had failed to agree, stated to them the desirability of bringing in a verdict; such statement not being coercive or persuasive in favor of either party.

Appeal from District Court, Hunt County; A. P. Dohoney, Judge.

Action by Aubrey Brown by next friend against the Texas Midland Railroad. Judgment for plaintiff, and defendant appeals. Affirmed.

Coke & Coke, of Dallas, Dashiell, Terry & Brown, of Terrell, and S. W. Marshall, of Dallas, for appellant.

B. Q. Evans, of Greenville, and W. A. Shields, of Houston, for appellee.

RAINEY, C. J. Aubrey Brown, by next friend, appellee, brought this suit against the Texas Midland Railroad to recover damages in the sum of $40,000 for personal injuries. "He alleged that defendant operated a spur track on a steep downgrade going east along and upon Jordan street, and along the south side of a building occupied by Reeves Manufacturing Company, in Greenville, and that it had been the custom of employés of Reeves Manufacturing Company, when they had unloaded the east end of cars of coal into windows provided therefor, to loosen the brakes and cause the car to roll eastward until the coal in the west end was opposite the windows and then to throw on the brakes, stop the cars and finish unloading; that defendant's agents and servants knew of this custom; that on the 24th day of February, 1917, plaintiff undertook to so move a coal car when partly unloaded, and after same was in motion discovered that the brake would not hold, because the pin was out of the cogwheel, making it impossible to stop the car, and, in trying to put some wooden blocks on the rails in front of the wheels, his foot was caught under one of the car wheels, causing the injuries alleged. Defendant answered by general demurrer and general denial, and specially that on the occasion complained of it placed the car alleged to have injured plaintiff, on the side track at Reeves Manufacturing Company's plant, with its wheels scotched with solid blocks, making its position on said track secure, delivered same to the Reeves Manufacturing Company, of which plaintiff was an employé, and had full knowledge of the condition of said car, and the track on which same was situated, and of all conditions alleged to exist, in so far as they did exist, or could have known of them by the exercise of ordinary care, and was guilty of contributory negligence in attempting to move said car and in attempting to stop same under the circumstances alleged."

A trial resulted in a verdict and judgment for appellee, from which appellant appealed.

The material allegations of appellee's petition were substantially established.

Appellant presents its first and second assignments together, and complains that the court erred in not giving its special charge to find for the appellant "because the proof showed without contradiction that plaintiff did not use ordinary care to ascertain the conditions of the brake before attempting to remove the car," and "because the uncontradicted evidence shows that plaintiff was guilty of contributory negligence in undertaking to move the car in question on a steep downgrade in a thickly settled portion of Greenville, without knowing the condition of said brake on same, or with knowledge thereof."

[1] As we understand the contention of appellant in its first proposition, it is that the law, under the circumstances, made it the duty of appellee to inspect and examine the defective brake and discover if it was safe before attempting to move the car. The appellee failed to inspect, but undertook to move the car before making an examination. But did the duty devolve on him to make such examination before so doing, or did he have the right to rely on the car being in such a condition as that the brake could be depended upon? We are inclined to the latter view, and that no duty of inspection of the car devolved upon appellee. The evidence shows that he was not warned of any defect in the brake, that he did not know of it, and was innocent of same being out of repair until the car failed to stop by use of the brake. It was customary for the railroad to place cars of coal on that track to be unloaded and it was the custom of employés of the Reeves Manufacturing Company to unload them in the manner that was being employed in this instance, which was known by appellant, and we fail to find any evidence which raises contributory negligence on the part of appellee. Standing on the incline as the car was the appellee knew that if it got from under control and run down the incline it would be apt to collide with some one passing or smash up some property.

The third and ninth assignments relate to the refusal of the court to give special charge No. 3, which reads as follows:

"Gentlemen of the jury: You are instructed that, if the defendant, Texas Midland Railroad, placed the car in question on the side track at Reeves Manufacturing Company's place of business with a defective brake, as explained by the evidence; and if you further believe that the plaintiff was familiar with the use of such a brake, and the extent of the defect and its effect upon lessening his ability to control said car with such brake, if put in motion; and if you further believe that the car was securely placed with blocks under the wheels to pre-

vent its getting away or moving; and if you further believe that the defendant knew of the places of business, wagon yards, street crossings, and persons living along said side track, as alleged in his petition; and if you further believe that the plaintiff was in such a position with reference to said brake as that its condition was obvious and patent to him and right before his eyes; and if you further believe that he had already removed the blocks from under the wheels in a manner occasioned only by his desire to see if the brakes were set so they would hold the car after it was set in motion, and was conscious at the time of the fact that if the brake was not in good condition he could not control the car if it was set in motion, and under these circumstances he ordered the negro to rock the car, and thereby start it—he would be guilty of contributory negligence in not exercising ordinary care involved in looking at said brake, or taking hold of same for that purpose; and, if you so believe, you will find for the defendant. And if you believe from all the circumstances in evidence, including plaintiff's three years' service for Reeves Manufacturing Company, in which a part of his duties were to unload cars of coal on this same side track, and that plaintiff knew, or ought to have known, that it was possible for the brake on this car to be defective in the manner explained in the evidence, and, knowing of that possibility, undertook to move said car without ascertaining the condition of said brake after said car had been securely placed with wheels blocked on said side track, then you are instructed that plaintiff assumed the danger or dangers involved in moving said car without investigating the condition of the brake on same, and you will find for the defendant."

[2, 3] There was no error in refusing to give this charge, because it fails to state the law correctly, in that it assumes that appellee knew of the defective brake, or ought to have known, and that he undertook to move said car without ascertaining the condition of said brake after said car had been securely placed with wheels blocked on said side track. Appellee had the right to assume that appellant had its car supplied with safety appliances, and it was not his duty to examine said car to ascertain a defective brake. As this charge was erroneous, it did not devolve upon the court to give a correct charge, there being no request so to do, and no bill of exception presented to comply with said request. The refusal to give a correct charge in lieu of an erroneous one will not be considered, in the absence of a proper exception and assignment. Hovey v. Sanders, 174 S. W. 1025; Walker v. St. Ry. Co., 151 S. W. 1142.

[4] Appellant specially pleaded contributory negligence and specifically that appellee "also in attempting to stop same by placing his foot in front of the moving wheel" and his failure "to examine the condition of the said car." In order for one to recover on contributory negligence he must prove negligence in the way it specially pleaded, and the court is restricted to grounds alleged in the answer. Railway Co. v. McClain, 80 Tex. 85, 15 S. W. 789.

The fourth error assigned is that the court erred in refusing to instruct the jury as follows:

"You are instructed in this case that to go in front of a moving car by the plaintiff is negligence, and, if the injury complained of in this case was caused by reason of his being in front of said car, that he was guilty of contributory negligence causing the injury by being in front of same, unless you further believe that his going in front of the moving car was for the purpose of saving human life, and, the evidence failing to show any one in peril of his life or serious injury, that plaintiff could not claim his position there to be the result of that degree of alarm for the safety of others which would cause him to overlook and forget his own safety."

[5] This charge assumes that appellee was guilty of contributory negligence when the evidence shows under the circumstances his placing himself in front of the car did not constitute negligence, and the court did not err in refusing said charge. The evidence shows that appellee thought it was necessary to act as he did to prevent accidents to persons passing along the street and damage to property.

Appellant complains of a talk made to the jury as follows:

"That upon the trial hereof the jury retired to consider their verdict about 3:30 o'clock p. m. on Friday, July 5, 1917, and about 6 o'clock p. m. were called in by the judge presiding, Hon. A. P. Dohoney, and stated, in answer to a question by the court, that they had agreed on liability, but could not agree upon the amount of same, and were permitted to go to their homes for the night; the court stating to them that the room provided for holding the jury together in was too hot, too close, and too small for the jury to get any rest and comfort during the night, if required to stay together, and for which reason he would permit them to separate and go to their homes, and required to return to court next morning at 8:30 o'clock and resume consideration of the case; that after said jury was released for the night, the judge presiding desired to return to his home at Paris, because of the illness of his father, and, this being the last case that could be called during the week, requested Judge William Pierson, who resides in Greenville, and is judge of the Eighth district court of Texas, to receive the verdict of the jury in case they desired to report during his absence, and in making said request advised Judge Pierson that the jury had already agreed upon the question of liability. This action of the judge presiding was not known to the defendant or its counsel until the next day, and at which time it was impossible to take any exception thereto, and upon the first opportunity thereafter the defendant did except and file this its exception, and asks that the same be allowed and ordered filed as a part of the record in this case. That upon the trial hereof, and in the afternoon of July 7th, about

2 o'clock p. m., Deputy Sheriff W. F. Bowen, in the sheriff's office adjoining the district courtroom, said to Judge W. M. Pierson, who was present for the purpose of receiving the verdict of the jury in case they agreed and desired to report, that the jury had asked that the court be called in order that they might report to him that they could not agree, and that the said deputy sheriff had told them that the court knew they had not agreed from the fact that they had not reported, and the said deputy sheriff, W. F. Bowen, thereupon suggested to the judge that he might bring the jury into the courtroom, and the court might lecture them a little, and it might enable them to arrive at a verdict, to which the court assented, and said officer started towards the jury room, and counsel for the defendant and Judge Pierson proceeded into the courtroom, where counsel for the defendant advised the judge that the defendant did not desire the jury lectured by the court for the purpose of enabling them to bring in a verdict, to which the court replied that that was natural and probable, because, the jury having already agreed upon liability, that any verdict they would now bring in was bound to be a verdict for the plaintiff, and as a matter of course the defendant preferred that no such verdict be returned, to which counsel for the defendant assented, and about which time Deputy Sheriff Bowen, followed by the jury, came into the courtroom, and the jury greeted by Judge Pierson with the salutation, 'Good evening, gentlemen,' and the jury responded in the same good nature, one of whom observed that they had expected to find Judge Dohoney on the bench, and to which the court replied: 'Judge Dohoney told me last night that he expected you to return a verdict by 10:30 this morning, and, as his father was ill, requested me to receive your verdict, if you agreed and desired to report. He also told me that you had agreed upon a part of your verdict.' The court then asked the jury if they had not agreed, to which they replied that they had not, and did not think that they could agree. The court then advised the jury that Judge Dohoney had not asked him to discharge them, but to receive the verdict, and he would not feel warranted in discharging the jury; 'that in his own court he had made it a rule to keep the jury together until a verdict was reached, and he felt that he should be as strict while acting for Judge Dohoney as he was in his own court; that the purpose of a trial was to secure a verdict when it was finished, and that without a verdict all the labor of the trial was wasted, and that he was sure Judge Dohoney would be greatly disappointed if this jury should fail to agree.' The court then asked the jury if they were in a good humor with each other, and all of them assured him that they were, and he told them they appeared to be men who were not acting stubborn just for the sake of being stubborn, and that he felt they could yet reach a verdict, and suggested to them the following plan as being a good one, and one that he had seen work before, resulting in a verdict being returned after the jury had announced that they could not agree. The court then outlined this plan to the jury for the purpose of enabling them

to arrive at a verdict, to wit: 'Go with the deputy sheriff for a 25 or 30 minutes walk, during this time forget all that you have been doing, and trying to do, and just try to think about getting a good relaxation from the weariness of the jury room, it being very tiresome to just remain in the jury room as you have been doing since yesterday evening, and when you get back to the jury room then commence anew your work of trying to reach a verdict, and in the opinion of the court you will be able to bring in a verdict in a short while. I have seen this plan work often, and as long as the members of the jury are in a good humor with each other there is always hope that they can return a verdict;' the court further stating to the jury that a verdict must not be a one-man verdict or an eleven-man verdict, or any other number except a twelve-man verdict, and that all must agree to it before it was a verdict; that they should do their best to consider the case and all the evidence in the case, and to arrive at a verdict in order that the labors of the court might not be wasted. To which statement to the jury by Judge Pierson the defendant excepted, and in making the exceptions the court said back to counsel, 'There was nothing coercive in what was said to the jury,' to which counsel for defendant replied, 'Perhaps not.' To all of which defendant reserves its exception, and asks that this bill of exception be allowed and ordered filed as a part of the record in this case."

The judge appended the following explanation:

"The foregoing bill is allowed and ordered filed with this explanation: During the day upon which the trial was continued I announced to counsel that I would go home that night, and would request Judge Pierson to receive the verdict, or leave him in charge of the court and jury; that being the last trial for the court. Do not know whether defendant's attorney heard the announcement or not. The jury retired about 3:30 o'clock p. m. I remained in the courtroom until about 6:30 p. m., and excused the jury for the night, as recited in the bill, after instructing them as required by article 1960, R. S.

"A. P. Dohoney, Judge 62d Dist."

[6, 7] There is nothing in the statement made by Judge Pierson to the jury, and as said by Judge Pierson, that was "coercive," or that persuaded the jury to render a verdict for either party, and if rule No. 62a (149 S. W. x) applies to any case, this is one. The assignment is overruled.

The verdict is not complained of as being excessive, and there is no indication that the judge's talk increased the amount of the verdict.

We have considered every assignment of error not here mentioned, and overruled same.

The verdict and judgment are supported by the evidence, and the judgment is affirmed.